Maurice Bellows, Joseph W. Brown and Max F. Dresdner, Co-Partners, Doing Business as Shoreland Hotel, Plaintiffs-Appellants, v. Gus F. Ziv, Defendant-Appellee.

### Gen. No. 48,459.

First District, Third Division.
November 28, 1962.

Rudnick & Wolfe, of Chicago (Lester D. Foreman, and Perry Snyderman, of counsel), for appellants.

Grossman & Grossman, of Chicago (Lester N. Grossman and Max Grossman, of counsel), for appellee.

On Rehearing

MR. JUSTICE McCORMICK delivered the opinion of the court.

■ This appeal is taken from an order entered in the Municipal Court of Chicago dismissing the fourth amended statement of claim of the plaintiffs on motion of the defendant. The plaintiffs elected to stand on the statement of claim, and judgment order was entered in the trial court that the cause be dismissed. By his motion to strike, the defendant admitted all matters well pleaded in the statement of claim.

In this case the suit was brought by certain beneficiaries under an Illinois land trust. These beneficiaries, as partners, were operating and managing the Shoreland Hotel.

The defendant, Gus F. Ziv, on November 2, 1948, had entered into a lease with the Shoreland Hotel Company, a corporation then engaged in managing and operating the hotel, for an apartment in the hotel. The term of the lease was for one year, commencing January 1, 1949 and expiring December 31, 1949. At the end of the term the lessee continued to pay rent.

On or about June 8, 1954 the American National Bank and Trust Company of Chicago, as trustee under the terms of a trust agreement dated June 8, 1954, known as Trust No. 10380, became vested by mesne conveyances with the fee simple title to the Shoreland Hotel premises. The trust agreement, a copy of which was attached to the statement of claim, contained the ordinary provisions usually found in this type of trust. Among other things it provided that the trustee would take title to the premises in question and hold it for the "uses and purposes and upon the trusts herein set forth." The agreement further provides that the interest of the beneficiaries should consist solely of the power of direction to "deal with the title to said real estate and to manage and control said real estate as hereinafter provided, and the right to receive the proceeds from rentals and from mortgages, sales or other disposition of said real estate"; that such rights "shall

345

be deemed to be personal property, and may be assigned and transferred as such"; and that no beneficiary at any time shall have "any right, title or interest in or to any portion of said real estate as such, either legal or equitable, but only an interest in the earnings, avails and proceeds as aforesaid." It further made provision that the trustee should not incur any personal liability for anything that it might do in or about the real estate or for injury to any person or property happening thereon. It further provided that the designated trustee is the sole owner of record of the real estate referred to, and that the trustee shall "convey title to said real estate, execute and deliver deeds for or otherwise deal with said trust estate only when authorized to do so in writing" by beneficiaries owning ninety percent or more of the beneficial interest. There is also a provision that the beneficiary or beneficiaries shall in their own right "have the full management of said real estate and control of the selling, renting and handling thereof, and any beneficiary or his or her agent shall handle the rents thereof and the proceeds of any sales of said property, and said Trustee shall not be required to do anything in the managment or control of said real estate or in respect to the payment of taxes or assessments or in respect to insurance, litigation or otherwise, except on written direction," and a twenty year limitation was placed upon the trust. The agreement also contained the usual provision that the agreement should not be placed on record.

The defendant continued to occupy the same premises and to pay the same rent. He paid his rent to the beneficiaries operating as the Shoreland Hotel, and, according to the complaint, has since June 8, 1954 "attorned to and acknowledged plaintiffs as landlord of the said demised premises." He continued to pay rent up to and including the instalment of rent due October 1, 1958. On September 5, 1958 the defendant sent a

346

letter addressed to the Shoreland Hotel giving notice that he would on October 31, 1958 permanently vacate the apartment occupied by him. On the latter date the defendant vacated the premises. The plaintiffs in their fourth amended statement of claim sought a judgment for eight months' rent allegedly owing to them commencing with the November 1, 1958 rent.

The plaintiffs filed three statements of claim, each of which was stricken on motion of defendant. This appeal is taken from the judgment order entered striking the fourth amended statement of claim and dismissing the suit.

The only question before us is whether or not the plaintiffs, beneficiaries under the trust, have the right to maintain an action for rent, in their own names, against the defendant. No other question is involved nor will be considered. Many other matters have been discussed in the briefs before us which are not pertinent to this issue. The question as to whether the beneficiaries in the first instance would have the right to make a lease with the tenants is not before us, nor will we consider or pass upon it. Nor will we consider the question of whether the plaintiffs, as beneficiaries, have a right to a distraint or to proceed in forcible detainer against the defendant.

At this point it is appropriate to discuss the general rules of law governing the relationship between the parties.

 Where a tenant holds over after the expiration of a lease for a year or years, the landlord may elect to accept and treat him as a tenant from year to year. 24 ILP Landlord and Tenant, sec 65; Eppstein v. Kuhn, 225 Ill 115, 80 NE 80. The election to treat the tenant as a holdover tenant is exclusively that of the landlord, and the presumption of law, in the absence of a preponderance of evidence establishing a contrary agreement, is that there is a holding over

upon the terms of the original lease. The terms of the new tenancy from year to year are subject to all the terms and conditions contained in the original lease so far as they are applicable. Cottrell v. Gerson, 296 Ill App 412, 16 NE2d 529, affirmed 371 Ill 174, 20 NE2d 74; 24 ILP Landlord and Tenant, sec 67. The holding over does not renew or extend the lease but it creates a new tenancy from year to year. Such tenancies are the creation of judicial decisions based upon principles of policy and justice and are indefinite as to duration. Such a tenancy has many of the qualities of a tenancy for a definite term of years, but substantially it is a tenancy at will except that it cannot be terminated without notice to quit. In Bell v. Groom, 224 Ill App 58, the court states:

"In some jurisdictions it has been held that a tenant who occupies demised premises for several years after the termination of his lease creates each year a new term expiring at the close of the current year and requiring no notice for its termination, but such rule is not in force in Illinois, where it has been repeatedly held that if a tenant under a demise for a year or more holds over at the end of his term without any new agreement with the landlord, he will be treated as a tenant from year to year. (Hunt v. Morton, 18 Ill 75; Goldsborough v. Gable, 140 Ill 269.) And it seems to us that the Illinois rule is according to the great weight of authority on the subject. The Appellate Court of the First District in a well-considered case, Hately v. Myers, 96 Ill App 217 (following the language of Goldsborough v. Gable, supra), said that where the tenant remained in possession after the expiration of his term without any new contract in respect thereto, it was optional with appellant to treat him as a trespasser waiving the wrong of holding over

348

or to treat him as a tenant; and by accepting the payment of rent thereafter the landlord made his election and the tenant became a tenant of the premises from year to year upon the same terms and subject to the same rent as provided in the original contract. And it was held by the court that where a tenant remains in possession after the expiration of a term of years, with the consent of the landlord, the law will imply a new tenancy from year to year, i. e., without a definite period for its termination, and if either party desires to terminate it, good faith requires that reasonable notice should be given. And it was further held that under the statute in force in this State such notice must be a 60-day notice."

In the instant case, at the end of defendant's term under his sublease, the fact that he continued to pay rent resulted in the creation of a year to year tenancy.

■ The fourth amended statement of claim stated that the plaintiffs are co-partners in the ownership and operation of the premises in question under the style and description of Shoreland Hotel. It further alleged that the "fee simple title to the real estate and property above described" became vested by mesne conveyances in the trustee. It is our duty to determine if the fourth amended statement of claim sets out a cause of action. The statement of claim was ineptly drawn and only indicates that mesne conveyances were made of the fee simple title to the real estate. It does not state whether the real estate was owned by the Shoreland Hotel Company and conveyance made directly to the trustee or whether the Shoreland Hotel Company operated the property under a lease made to it by a third party owner. If the conveyance of the real estate was made either to the beneficiaries or to the American National Bank and Trust Company of Chicago, as trustee, by a

349

third party owning the property, who had made a lease to the Shoreland Hotel Company, that lease, together with all subleases made by the company, would follow the fee simply conveyance. In Lipschultz v. Robertson, 407 Ill 470, 473, 95 NE2d 357, 359, the court states the rule and says:

"In People ex rel. Hargrave v. Phillips, 394 Ill 119, we quoted with approval the language in State v. Royal Mineral Ass'n, 132 Minn 232, as follows: 'Unaccrued rents are not personal property. They are incorporeal hereditaments. They are an incident to the reversion and follow the land. [Citations.] They pass with a sale or devise of the land. [Citations.] . . . In fact, although separable from the reversion they are until such separation a part of the land.' We further said: 'Under the foregoing well-settled principles a deed by appellee conveying the land upon which the lease was given would convey the lease and the right to receive unaccrued rentals.' "

■ Section 14 of the Landlord and Tenant Act (Ill Rev Stats, c 80, § 14) provides: "The grantees of any . . . rents . . . , the assignees of the lessor of any demise, . . . shall have the same remedies . . . for the non-performance of any agreement in the lease, or for the recovery of any rent . . . as their grantor or lessor might have had if such reversion had remained in such lessor or grantor." By virtue of that section the grantee of title to real estate is placed in the shoes of the grantor in reference to rents.

■ Had a third person owned the premises and made a lease to the Shoreland Hotel Company, a corporation, and the Shoreland Hotel Company in turn made a sublease which by operation of law became a sublease from year to year, that tenancy would cease to exist at the expiration of the lease of the owner to the Shore-

350

land Hotel. Murr v. Glover, 34 Ill App 373; Sutherland v. Goodnow, 108 Ill 528, 535; Reed v. Bartlett, 9 Ill App 267, 270; 32 Am Jur Landlord and Tenant, secs 424, 841. However, if the sublessee attorns to the owner of the premises the relation of landlord and tenant would continue under the terms of the original tenancy. 51 CJS Landlord and Tenant, sec 48. Had the lease to the Shoreland Hotel Company terminated by agreement between the third party owner and the hotel company, the same rule would apply. 51 CJS Landlord and Tenant, sec 129b; 52 CJS Landlord and Tenant, sec 495. When real estate is sold the purchaser takes it subject to existing valid leases. As between the grantor and the lessee the relation of landlord and tenant is terminated by the sale, but the lease, unless it is so conditioned, is not determined. 51 CJS Landlord and Tenant, sec 93. The lease of a subtenant is also continued.

While we probably could take the view from the admissions in the petition for rehearing and the answer thereto [1] that title to the premises in question was in

---

[1] In the petition for rehearing filed by the defendant it is stated:

". . . If, however, notice must be taken of deeds which are recorded, and this Court statedly takes such notice . . . it should know that the deeds of record reveal that in 1948 and 1949, and prior thereto, and until June 4th of 1954, title to the property in question was in the 5454 South Shore Corporation and not then, prior thereto, or afterward, in the Shoreland Hotel Company, a Corporation.

"Furthermore, the public records disclose that on June 4, 1954, the said 5454 South Shore Corporation conveyed title to the real estate in question to Henry J. Siegel and David Saul Klafter and thereafter on June 8, 1954, the said Henry J. Siegel and David Saul Klafter and their respective wives conveyed the said real estate to the American National Bank and Trust Company as trustee.

"From all of the above, it becomes obvious that the Shoreland Hotel Company, a Corporation, never held title to the property, did not create the Trust and that its interest, if

351

5454 South Shore Corporation and that that corporation conveyed title to Siegel and Klafter, beneficiaries in the trust agreement who had by deed of even date conveyed title to the trustee, nevertheless we feel we should also discuss the other possibilities which might be proved under the terms of the statement of claim.

There are four possibilities of devolution of title in the case before us. Had the title to the premises in question been in a third party with a lease to the Shoreland Hotel Company and a sublease to Ziv, a conveyance by the third party to the trustee or to the beneficiaries would carry with it the leases and bring into effect the provisions of section 14. Had the title to the premises in question been in the Shoreland Hotel Company, which had made a lease to Ziv, and the premises were conveyed to the trustee directly or to the beneficiaries, the lease again would follow the conveyance. In case the premises were conveyed to the beneficiaries, either by the Shoreland Hotel Company as owner or by a third party owner, the beneficiaries would by the trust agreement of even date as the trust deed to the trustee reserve rents (leases) to themselves. Had the title to the premises in question been conveyed in trust to the trust company directly by the Shoreland Hotel Company as owner or by a third party holding title, the trust company by the trust agreement of even date would have assigned the rents to the beneficiaries.

Section 14 of the Landlord and Tenant Act, supra, puts the grantee in the same position as that of the grantor with regard to the leases. The statement of claim alleges that the premises were conveyed on June 8, 1954 and that "ever since June 8, 1954, the defendant

---

any, in the real estate was that of a lessee—and that the lease it entered into with Defendant in 1948 was a sublease."

This statement is affirmed by the plaintiffs in their reply to the petition for rehearing.

352

has paid the monthly rent for the premises occupied by him in the real estate and property above described to plaintiffs and has, at all times since said date, attorned to and acknowledged plaintiffs as landlord of the said demised premises." This would clearly imply a termination of a lease made by the Shoreland Hotel Company under which it operated the premises. This is strengthened by the allegation that the plaintiffs have operated and owned the property under the style and description of Shoreland Hotel. It is also alleged that on June 8, 1954, there was a conveyance of the premises to the bank as trustee.

■ Estates less than a freehold are regarded as chattels real. 31 CJS Estates, sec 12; McArthur v. Weidert, 375 Ill 212, 30 NE2d 610. See also Orchard v. Wright-Dalton-Bell-Anchor Store Co., 225 Mo 414, 125 SW 486.

■ A tenancy from year to year is transferable and assignable as such by the lessor. 51 CJS Landlord and Tenant, sec 131; Howland v. White, 48 Ill App 236. In Barnes v. Northern Trust Co., 169 Ill 112, 48 NE 31, the court stated: "In Fisher v. Deering, 60 Ill 114, we held, that, at ancient common law, a lease, like any other agreement or *chose in action,* was not assignable, so as to give the assignee an action against the tenant; that, by the 32 Henry VIII, (c 34, § 1,) the assignee of the reversion became invested with the rents, and, where the tenant attorned to him, he might maintain an action of debt to recover subsequently accruing rents; that, although the assignment of the reversion created a privity of estate between the assignee and the tenant, still it required an attornment to create such a privity of contract, even under the 32 Henry VIII, as would authorize the assignee to sue for and recover rent in his own name; and that the 32 Henry VIII, (c 34, § 1,) was adopted prior to the fourth year of James

353

I, and was applicable to our condition, and was in force in this State." However, the court further holds that since the passage of section 14 of the Landlord and Tenant Act in 1874 there is no necessity of an attornment [2] and the rule announced in Fisher v. Deering, supra, has been abrogated, and cites Howland v. White, supra, as holding that the assignee of a lease is granted the same remedies by action for recovery of the rent as the lessor might have had while he was the owner of the lease. This case refers to an assignment of a lease by the lessor. In 32 Am Jur Landlord and Tenant, sec 92, it is stated:

"Through lack of precision in the use of language, the expression 'assignment of lease' has frequently been used with reference to the lessor's interest, and no little confusion has been thereby created. For the purpose of avoiding ambiguity, the expression 'assignment of lease' ought always to refer to the interest of the lessee, and never to that of the lessor. But the word 'lease' and the phrase 'all right, title, and interest in a certain lease' have been sometimes used in designating the thing transferred by the lessor. The name of the instrument by which an estate is created may be used to designate the estate and in this way the very frequent use of the word 'lease,' in designating the leasehold interest of the lessee, is justified, but it is difficult to justify the use of that word in a transfer by the lessor, since the lessor's estate is not created by the lease, and the expression does not describe the thing conveyed (the lessor's interest) with sufficient particularity. Where the lessor has actually assigned his lease or his interest under the lease, with no indication as to what was in-

---

[2] Nevertheless in the instant case there was an actual attornment.

354

tended to pass, the most reasonable rule is, and most courts have held, that unaccrued rents pass, together with such covenants as are designed for the collection thereof, but all convenants designed for the protection of the reversion, with the reversion itself, remain in the assignor. . . . The most reasonable and liberal view would therefore be that since the reversion is not transferred, rights under covenants intended to protect or be beneficial or incidental to the reversion remain in the transferrer, the transferee taking rents subsequently accruing, with all rights under covenants designed for the collection thereof. This is apparently the position taken by most courts."

See annotation in LRA 1915C, pp 195–6, where the same rule is stated, and it is further stated:

"This is apparently the position taken by most courts. Dixon v. Buell, 21 Ill 203; Bordereaux v. Walker, 85 Ill App 86 . . . .

"The actual holding in the following cases is not inconsistent with this theory, although the cases cannot be cited as directly supporting it. Meyer v. Sachsel, 143 Ill App 563; McKinney v. Charles Mulvey Mfg. Co., 157 Ill App 339 . . . ."

In any case, in order to determine the rights of the beneficiaries it is necessary to go to the trust agreement. If the beneficiaries had title to the premises and conveyed the same to the bank, at the same time entering into a trust agreement with the bank as trustee, the rent was held out and reserved, and it was agreed that the beneficiaries should have full management of the premises and control of the renting thereof, and that any beneficiary or his agent had the right to handle the rents. In Brazowski v. Chicago Title and Trust Co., 280 Ill App 293, where the beneficiaries conveyed title

to a trustee, with a trust agreement somewhat broader than the one before us, the court says:

"It is obvious, of course, that the settlors, and not the trustee, created the trust, and therefore any rights or powers given or reserved over the res, either to the trustee or to the beneficiaries, emanated from and were created by the settlors, who were free to mold it according to their desires within legal limitations. (Equitable Trust Co. v. Fisher, 106 Ill 189, 195; Irish v. Antioch College, 126 Ill 474, 482.)"

The salient provision in the trust agreement in the Brazowski case is set forth at page 299:

"The beneficiaries, on the other hand, while given no 'right, title or interest in or to any portion of the real estate, as such,' reserved to themselves the proceeds and avails of said property and the right to direct the trustee 'to make deeds for, or otherwise deal with the title,' provided 'the trustee shall not be required to enter into any personal obligation or liability,' and the beneficiaries are by said trust indenture declared to be entitled to and expressly given 'the management and control of said property and of the selling, renting and handling thereof.' "

This provision is substantially the same as the one in the trust agreement before us. The court further states:

". . . there are two donees of powers, both created by the donors: (1) The trustee, in respect to the powers to be exercised by it, which it holds *in trust;* and (2), the beneficiaries, in respect to powers to be exercised by them which they hold not in trust, but *in their own right* and for their exclusive benefit."

356

If, on the other hand the title had passed from a third party owner directly to the bank, then by the trust agreement entered into with the beneficiaries of even date the rents were assigned to the beneficiaries. Whether the property in question had been conveyed in the first instance by its owners to the beneficiaries, who thereupon conveyed in trust to the American National Bank and Trust Company of Chicago and on the same date entered into the trust agreement with the bank, or had it been conveyed by its owners directly to the American National Bank and Trust Company of Chicago, as trustee, and the trust agreement entered into at the same time as the conveyance, suit could properly be brought by the beneficiaries for rents allegedly due them under the year to year lease. The statement of claim has sufficient allegations to support either of these possibilities.

We are aware that in Liberty Nat. Bank v. Kosterlitz, 329 Ill App 244, 67 NE2d 876, there is language which is not in accord with the views expressed in this opinion. At the time when that case was in the trial court the O. P. A. rent regulations were in force and there was a requirement that in order for a plaintiff to successfully proceed under the local law to evict a tenant it was necessary that an O. P. A. certificate had been issued to him. A careful analysis of the decision shows that the only matter decided was that where the certificate had been issued to the beneficiary and suit to evict was brought by the trustee the action could not be maintained. All other matter in the case must be regarded as dicta and not binding upon this court.

 The fourth amended statement of claim sets out a cause of action. The judgment of the Municipal Court of Chicago is reversed, and the cause is remanded with directions to the trial court to overrule defendant's motion to dismiss plaintiff's fourth amended statement of claim and to require the defendant to file an answer

357

thereto within a time to be fixed by the court, and for further proceedings consistent with the views expressed herein.

Reversed and remanded with directions.

DEMPSEY, P. J. and SCHWARTZ, J., concur.