ILLINOIS VALLEY ASPHALT, INC., Plaintiff-Appellee, *v.* LA SALLE
NATIONAL BANK *et al.*, Defendants. —(CROSS COUNTRY
CONSTRUCTION COMPANY, INC., Defendant-Appellant.)

Fifth District   No. 77-108

Opinion filed October 20, 1977.

Craig A. Randle and James R. Potter, both of Londrigan & Potter, P. C., of
Springfield, for appellant.

Albert W. Hall and Larry D. Kuster, of Rammelkamp, Bradney, Hall &
Dahman, of Jacksonville, for appellee.

Mr. JUSTICE GEORGE J. MORAN delivered the opinion of the court:
This case involves the construction of a guarantee clause in a contract

between defendant-appellant Cross Country Construction Company (hereinafter "defendant") and plaintiff-appellee Illinois Valley Asphalt. Defendant was the general contractor for a shopping center development in Taylorville, Illinois. Plaintiff contracted with defendant to pave the parking lot for the shopping center. After completing the lot, plaintiff received only partial payment of the contract price and brought suit on the balance. Defendant counterclaimed for damages incurred as a result of plaintiff's failure to repair certain defects in the parking lot allegedly required by a guarantee clause in the subcontract. The trial judge found for plaintiff for the entire amount claimed and against defendant on its counterclaim.

Defendant contends that the trial court erred in not interpreting the guarantee clause of the subcontract to require plaintiff to repair all defects in the parking lot which occurred within the 2-year guarantee period. Plaintiff argues that it was required to repair only those defects caused by its own failure to perform in a workmanlike manner or by its use of defective materials.

The paving subcontract provided that the defendant would supply the stone-base material to underlie the pavement and that plaintiff would lay 2 inches of bituminous asphalt on the base. The base material was to meet certain specifications and plaintiff was given the option of rejecting base material it found unacceptable.

"Any soft base on base unacceptable to the subcontractor shall be called to the attention of the contractor for correction and should subcontractor not notify contractor to the contrary it shall be agreed that subcontractor accepts said base on condition of base shall not be any cause for failure to perform guarantee and to surface as provided herein."

Plaintiff guaranteed its work and further agreed to pay the cost of repairs to the lot so long as the base material measured 5 inches or more.

"The subcontractor guarantees that all work and materials furnished by it meet all requirements of this contract and are in all respects free from defects. He will promptly repair all such defects and agrees to service this installation for a period of two years after tenants take occupancy. The subcontractor agrees that time is of the essence as to repairs to defects of faulty work. Note on guarantee: Notwithstanding the foregoing it is agreed that the cost of repairs to faulty work shall be borne by the subcontractor if said base material measures five inches or more."

The record indicates that the stone base material acquired by defendant did not meet the specifications for the parking lot prepared by defendant's engineers and architects. In May and June of 1974, after the base had been prepared, defendant on several occasions requested

plaintiff to begin paving the east half of the parking lot. Plaintiff refused to commence paving because of dissatisfaction with the base material and wet weather conditions. Plaintiff then paved the east half of the lot after defendant agreed to waive the guarantee for that portion. The guarantee remained in effect for the rest of the parking lot which was completed in early September. On October 3, 1974, representatives of plaintiff and defendant met and made arrangements for final payment, plaintiff agreeing to certain deductions in the subcontract price in consideration of defendant's promise to tender substantial payment within one week and the balance within 30 days. Various defects in the parking lot were discussed at this October 3 meeting, but final payment of the balance was not conditioned on any specific repairs.

Donald Hirschfeld, president of defendant Cross Country Construction Company, testified that plaintiff failed to make repairs it was obligated to make under the guarantee clause and that as a result defendant was forced to make these repairs. Defendant seeks recovery of $10,299 it expended for these repairs and also an award of $18,000 to pay for additional repairs. The evidence clearly shows that there were various failures in the west half of the lot requiring fairly substantial repairs. Plaintiff and defendant, however, both disclaim responsibility for making these repairs. A civil engineer who took 10 core samples of the west half of the lot and who testified as a witness for plaintiff, concluded that the defects were not caused by failures in the asphalt but were due to a soft base and excessive vehicular traffic. This witness also testified that the stone base in the ten core samples was 5 to 6 inches thick with the exception of two of the samples. Plaintiff contends that since the guarantee requires it to repair only those defects in the material provided by plaintiff or work performed by plaintiff, it is not responsible for failures in the parking lot caused by a defective base or excessive traffic. Defendant contends that plaintiff's guarantee obligates plaintiff to repair all defects in the lot occurring within the 2-year guarantee period. For the reasons specified below, we conclude that the subcontract guarantee does require plaintiff to repair most of the defects in question.

■■ The trial court found for plaintiff in the full contract amount and denied all damages under defendant's counterclaim. Defendant asserts that the issue involved in this case is a question of fact and therefore the trial court's judgment should not be set aside unless it is found to be against the manifest weight of the evidence. We agree with the general proposition that the issue of whether a contract has been performed according to its terms is a question of fact. The trial court's decision in this case, however, was based on the court's construction of the guarantee clause of the subcontract. It is well settled in Illinois that the construction, interpretation or legal effect of a contract are issues to be resolved by the

court as questions of law. (*Chicago Daily News v. Kohler,* 360 Ill. 351, 196 N.E. 445; *Tondre v. Pontiac School District No. 105,* 33 Ill. App. 3d 838, 342 N.E.2d 240.) The principal issue in this case involves the construction and legal effect of the subcontract terms and not whether plaintiff or defendant performed according to the terms legally construed. Since defendant's appeal raises a question of law, the rule that a reviewing court may not set aside findings of a trial court unless contrary to the manifest weight of the evidence does not apply. The construction and legal effect of the relevant terms of the subcontract are to be determined by this court as any question of law, independent of the trial court's judgment. *Simon v. Horan,* 323 Ill. App. 527, 56 N.E.2d 147.

The principal objective in construing a contract is to give effect to the intentions of the parties. (*Martindell v. Lake Shore National Bank,* 15 Ill. 2d 272, 154 N.E.2d 683.) These intentions are to be derived from the language of the contract. (*World Insurance Co. v. Smith,* 28 Ill. App. 3d 1022, 329 N.E.2d 518.) If the terms of a written contract are certain and unambiguous the sole determinant of the parties' intentions is the instrument itself. *Bank of Marion v. Robert "Chick" Fritz, Inc.,* 9 Ill. App. 3d 102, 291 N.E.2d 836, *aff'd,* 57 Ill. 2d 120, 311 N.E.2d 683.

According to the clear terms of the subcontract, defendant was to provide the base for the parking lot and plaintiff the asphalt paving. Plaintiff was given the option of rejecting an unacceptable base but if plaintiff proceeded to lay asphalt without notifying the defendant of its dissatisfaction with the base, the contract clearly provided that the condition of the base could not be asserted by plaintiff as an excuse for its failure to comply with the guarantee. Under the guarantee plaintiff was obligated to repair all defects in the parking lot occurring as a result of all work and materials furnished by plaintiff and also to "service this installation for a period of two years after tenants take occupancy." A further note on the guarantee provided that "notwithstanding the foregoing it is agreed that the costs of repairs to faulty work shall be borne by the subcontractor if said base material measures five inches or more."

■■ Defendant contends that plaintiff's agreement to "service" the installation for 2 years obligates plaintiff to repair all defects in the west half of the lot. Plaintiff argues that the word "service" is susceptible of a variety of meanings and that when viewed in the context of the entire subcontract, plaintiff's promise to "service this installation" only obligates it to repair defects directly caused by its work or use of defective materials. We disagree with plaintiff's interpretation. The words of a contract are to be interpreted in their ordinary meaning unless it clearly appears that the parties intended them to have a peculiar or unusual meaning. (12 Ill. L. & Prac. *Contracts* §218 (1955).) Moreover, an express

warranty in a contract is to be interpreted in a manner that is consistent with the clear and natural import of the language used and in consideration of the subject matter of the contract. 12 Ill. L. & Prac. *Contracts* §242 (1955).

■■ Plaintiff is in the business of installing and repairing asphalt parking lots and roadways. The only reasonable interpretation that can be made of plaintiff's agreement to service the installation is that it clearly obligates plaintiff to perform services of maintenance and repair on the lot for the 2-year guarantee period. Plaintiff argues that it did not agree to service or repair faults in the lot caused by a defective base. The condition of the base, however, is necessarily within the scope of plaintiff's work as paving subcontractor. If plaintiff had laid the asphalt before the lot was graded or the base installed, certainly plaintiff could not disclaim responsibility under the guarantee for the failure of the lot. Plaintiff guaranteed that all its work and materials would be free from defects. When considered in light of the subject matter of the subcontract it is clear that the guarantee covered the actual work performed pursuant to the contract as well as the conditions under which that work was performed. This is evidence from another clause of the subcontract which allows plaintiff the option of rejecting base material it finds unacceptable and which provides that plaintiff's failure to object to the condition of the base waives plaintiff's right to assert any defects in the base as an excuse for not complying with the guarantee. Indeed, it is clear from the record that plaintiff was operating under this interpretation of the guarantee. On several occasions plaintiff refused to pave the east half of the lot when requested to do so because of dissatisfaction with the base. Plaintiff finally paved the east half after the defendant agreed to waive the guarantee. Plaintiff then paved the west half of the lot subject to the guarantee and without objecting to the base. By its own actions then, plaintiff has confirmed its obligation under the guarantee to repair all defects in the lot for a 2-year period.

Further evidence that plaintiff intended to be bound by the guarantee on the west half of the lot regardless of the cause of any defects is provided in a letter sent by plaintiff to defendant in February, 1975. Defendant wrote plaintiff on February 5, 1975, requesting plaintiff to make certain repairs pursuant to the 2-year guarantee. In a letter dated February 10, 1975, plaintiff made the following response to this request:

> "Our contract with you has a guarantee which we intend to uphold unless advised by our attornies [*sic*] not to do so because of not being paid for the job."

This is a clear acknowledgment by plaintiff of its obligations under the guarantee to make all necessary repairs to the west half of the lot regardless of the cause of the defects.

■■■ Although it appears clear from the language of the guarantee and the subcontract in general that plaintiff has an absolute duty to repair all defects in the lot occurring within 2 years, this construction conflicts somewhat with the note on the guarantee which provides that "notwithstanding the foregoing it is agreed that the cost of repairs to faulty work shall be borne by the subcontractor if said base material measures five inches or more." This note indicates that although plaintiff may be responsible for repairing all defects in the lot it is obligated to assume only the costs of repairs made in areas of the lot where the base measures 5 inches or more. We cannot ignore this portion of the guarantee. Contract terms and clauses should not be disregarded as meaningless or surplusage if a contract is susceptible of an alternative construction which will give effect and meaning to all of its provisions. (*Gross v. University of Chicago,* 14 Ill. App. 3d 326, 302 N.E.2d 444.) Moreover, this part of the guarantee was handwritten and where there is a conflict in a contract between handwritten terms and typed or printed terms, the handwritten terms prevail. (12 Ill. L. & Prac. *Contracts* §227 (1955).) We conclude, therefore, that plaintiff is obligated to pay the costs of all repairs necessitated by defects occurring within the guarantee period in any area of the west half of the parking lot in which the base measures 5 inches or more. Several major areas of failure were identified and core samples were taken at or near each of these areas. These samples revealed that the base measured less than 5 inches in only two out of 10 samples. According to the terms of the guarantee, plaintiff must bear the cost of repair only in those areas where the core samples indicated the base was 5 inches or more. Defendant is responsible for repairing defects in the areas covered by the two core samples in which the base measured less than 5 inches.

The trial court's decision is reversed and the cause remanded for further hearing to determine the damages owing defendant as a result of plaintiff's failure to comply with the guarantee as interpreted by this court.

Reversed and remanded with directions.

JONES and KARNS, JJ., concur.