AMERICAN NATIONAL BANK AND TRUST COMPANY OF CHICAGO, Trustee, *et al.*, Plaintiffs-Appellants, *v.* OLYMPIC SAVINGS AND LOAN ASSOCIATION, Defendant-Appellee.

First District (2nd Division)   No. 77-1437

Opinion filed May 23, 1978.

Paul Homer, Steven L. Bashwiner, and Elliot L. Bien, all of Chicago (Friedman & Koven, of counsel), for appellants.

Samuel Fumel and Morton J. Haberman, both of Chicago, for appellee.

Mr. PRESIDING JUSTICE STAMOS delivered the opinion of the court:

Plaintiffs, American National Bank and Trust Company of Chicago *et al.* (hereinafter "lessor"), brought an action pursuant to section 57.1 of the Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, par. 57.1), seeking to

adjudicate the enforceability of a lease entered into with defendant, Olympic Savings and Loan Association (hereinafter "lessee"), and to recover rents and damages for breach of contract. Lessee appeared and moved to dismiss the complaint or, in the alternative, for judgment on the pleadings. In support of the latter motion, lessee asserted (1) that the lease was unenforceable for want of mutuality and failure of consideration; and, (2) that lessee had timely exercised an option to cancel the lease. The trial court found that a timely cancellation had been effected, entered judgment in favor of lessee and denied lessor leave to file an amended complaint.

Lessor appeals and contends that the trial court erred in granting lessee judgment on the pleadings. Specifically, lessor maintains that the complaint and exhibits attached thereto create an issue of material fact regarding the construction of the cancellation clause so as to preclude lessee's entitlement to judgment as a matter of law. Alternatively, lessor asserts that the trial court abused its discretion in denying leave to file an amended complaint.

The lease in question was executed on September 4, 1974, and concerned certain real property located in Round Lake Beach, Illinois, commonly known as "Round Lake Beach Shopping Center." At the time this document was executed the premises were under construction and not ready for occupancy. Pursuant to the terms of the lease, lessor agreed to make certain capital improvements in the interim. Article II, paragraph 1 of the lease provides:

> "The term of this lease and Lessee's obligation to pay rent hereunder shall commence upon: (a) the date thirty (30) days after the day Lessor, or Lessor's supervising architect notifies Lessee in writing, that the leased premises are ready for occupancy; or (b) the date on which Lessee shall open the leased premises for business to the public, whichever of said dates shall first occur. The term of this lease shall end on the last day of the 10th consecutive lease year as said term "lease year" is hereafter defined. The term "lease year" as used herein shall mean a period of twelve (12) consecutive full calendar months. The first lease year shall begin on the date of commencement of the term hereof if the date of commencement of the term hereof shall occur on the first day of a calendar month; if not, then the first lease year shall commence upon the first day of the calendar month next following the date of commencement of the term hereof. Each succeeding lease year shall commence upon the anniversary date of the first lease year."

The leased premises were ready for occupancy on April 21, 1975, and, therefore, under the terms of the lease, rent was due no more than 30 days thereafter.

Under the terms of the lease agreement, lessee bound itself to diligently

pursue the government approval necessary to conduct a savings and loan business on the leased premises. This was memorialized in the form of a rider attached to and made part of the lease agreement. The pertinent provision is as follows:

> "The Lessee shall have the option to cancel this Lease at the end of the *sixth month* if the Lessee is unable to obtain approval from all necessary governmental authorities, satisfactory to Lessee, to conduct a savings and loan business at the leased premises, provided however that Lessee shall diligently pursue such approvals and shall not arbitrarily abandon the same. In any event, Lessee shall pay the Lessor in advance the sum of One Thousand Dollars ($1,000.00) for this privilege." (Emphasis added.)

Lessee notified lessor by letter of October 7, 1975, that it had chosen to exercise its option to cancel the lease due to an inability to obtain the requisite government sanction.

Resolution of the instant dispute depends entirely upon the construction of the phrase "sixth month" as it appears in the rider provision. Specifically, it must be determined at what point in time this term was to have commenced.

Lessee asserts that with respect to this provision the lease is unambiguous and, as a matter of law, admits of but one interpretation (*i.e.*, the term commenced on the date of occupancy or April 21, 1975); that upon this analysis the cancellation was timely; that the lease, so construed, represents the final and true expression of the parties' intention; that this intent may not be evidenced by other collateral matters; and, therefore, lessee concludes that the trial court properly awarded it judgment on the pleadings.

Lessor counters that the provision in question admits of different interpretations (*i.e.*, the term commenced on the date of the execution of the lease); that upon this analysis the cancellation was not timely; that such ambiguities may be resolved through the admission of extrinsic evidence; that the complaint and exhibits attached thereto present a factual question on this point; and, hence, lessor concludes that the trial court erred in disposing of the case without a hearing.

■■■ The construction of a lease is governed by the intention of the parties thereto and the court should ascertain and give effect of such intention as far as that may be done without contravening legal principles. (*Dasenbrock v. Interstate Restaurant Corp.* (1972), 7 Ill. App. 3d 295, 287 N.E.2d 151.) The intention of the parties must be ascertained, if possible, from the language of the lease, and the words used should be given their common and generally accepted meaning. (*American National Bank & Trust Co. v. Lembessis* (1969), 116 Ill. App. 2d 5, 253 N.E.2d 126.) In such cases where the language of a lease admits of ambiguity, either patent or

latent, the court may consider the position of the parties, the surrounding circumstances which existed at the time of the execution of the lease and the facts in connection with it. *South Parkway Building Corp. v. South Center Department Store, Inc.* (1958), 19 Ill. App. 2d 14, 153 N.E.2d 291.

■■ A latent ambiguity occurs where a writing appears on its face clear and unambiguous, but which, in fact, may be shown by extrinsic evidence to be uncertain in meaning. Such a latent ambiguity may be demonstrated and explained by parol evidence. See *South Parkway Building Corp. v. South Center Department Store*, and cases cited therein.

■■ In the instant case, the lease admits of such ambiguity. In its ordinary and usual sense, the word "month" connotes a measurable period of time commencing at a date certain. Both the date of the execution of the lease and the date of lessee's occupancy might provide a suitable commencement. While the word "month" appears at various other places in the lease with reference to the term of occupancy, in such instances the context is clearly expressed. Similar specificity is noticeably absent in the rider provision at issue. It may not be determined from the face of the document whether the omission was the result of negotiation or inartful draftmanship. Lessee correctly notes that the termination provision expressly recites that lessee shall pay lessor in advance the sum of $1,000 for the privilege of terminating the lease and infers therefrom that the parties intended a relatively long period of time within which lessee was to pursue the necessary governmental approval. Lessor counters that such a construction presumes that the parties contemplated an illegal occupancy of the premises for as much as six months. Examination of extrinsic evidence in the form of correspondence tendered to the trial court reveals additional and potentially differing interpretations of the termination provision.

There exists as between these two parties a genuine issue as to a material fact which serves to preclude lessee's entitlement to judgment as a matter of law. From the record as it stands, fair-minded men may draw differing conclusions as to the parties' intentions and the instant dispute is not amenable to resolution without consideration of collateral evidence.

Accordingly, the judgment of the circuit court of Cook County is reversed and the cause remanded for further proceedings.

Reversed and remanded.

PERLIN and BROWN, JJ., concur.