SOL K. GRAFF & SONS *et al.*, Plaintiffs-Appellants, *v.* PAUL F. LEOPOLD, Defendant-Appellee.

First District (5th Division)    No. 79-1362

Opinion filed January 16, 1981.

Rolland H. Stimson, Ltd., of Chicago (Rolland H. Stimson, of counsel), for appellants.

McConnell & Campbell, of Chicago, for appellee.

Mr. JUSTICE LORENZ delivered the opinion of the court:

Plaintiffs, lessees, brought an action for damages against defendant, lessor, for the alleged wrongful removal of a sign. Both parties filed motions for summary judgment, and the trial court granted summary judgment for defendant. Plaintiffs appeal and contend: (1) the lease is latently ambiguous on the question of preexisting signs and should be

construed in favor of the plaintiffs, and (2) an implied covenant exists between the parties which permits plaintiffs to maintain the sign.

The pertinent evidence as found in the pleadings, affidavits and depositions follows:

Plaintiffs, Sol K. Graff & Sons, a partnership, and Robert and Norman Graff as partners, are engaged in the real estate insurance and brokerage business. In 1965, they entered into a lease for office space in a building which was located at 3425 West Dempster Street, Skokie, Illinois, and owned by John Wall. Sometime in 1967 plaintiffs erected a sign directly above a large window in their office in the front of the building. The sign consisted of plastic letters about one foot high spelling out the words, "Sol K. Graff & Sons, Real Estate Consultants." It was clearly visible to travelers along Dempster Street.

In April 1974, defendant Paul Leopold purchased the building from John R. Wall. Defendant and plaintiffs then entered into a one year lease from July 1, 1974, to June 30, 1975. The lease was a standard form lease with a typewritten rider. The lease contained a set of rules and regulations, and Rule 1 provided:

"No sign, picture, advertisement or notice shall be displayed, inscribed, painted or affixed on any part of the outside or inside of said building or on or about the premises hereby demised, except on glass of the doors and windows of said premises and on the directory board of the building, and then only of such color, size, style and material as shall be first specified by the lessor in writing on this lease."

In addition, the typewritten rider to the lease provided:

"Lessee shall not place any signs on the leased premises, the building wherein the leased premises are located or the adjoining parking area without Lessor's prior written consent."

After the execution of the lease, defendant asked the plaintiffs to remove their signs from the building. Plaintiffs removed all of their signs, except for the plastic letters on the front outside wall. The plastic letters remained on the front outside wall of the building until the middle of January 1975, when workmen employed by defendant removed them. In March 1975, defendant installed large aluminum numerals "3425" at the spot where plaintiffs' sign had been. From January 1975 to at least May 1975 plaintiffs remained in the building and continued to pay rent.

Plaintiffs' complaint for damages, filed on July 18, 1975, alleged that there was an implied covenant between the parties allowing plaintiffs to continue to display the exterior sign. It further alleged that defendant breached the implied covenant by removing the sign, and that their business suffered greatly as a result. Defendant's answer relied on the express language of the lease prohibiting display of signs and denied the

existence of an implied agreement to the contrary. Both parties filed motions for summary judgment, and the trial court granted defendant's motion.

OPINION

■■ This appeal centers on plaintiffs' rights, if any, to continue to display the exterior sign. Plaintiffs argue here that the lease is latently ambiguous on the question of pre-existing signs, and that when properly construed it permits them to continue displaying the sign. In *Hoffman v. Clark St. Roadhouse* (1979), 79 Ill. App. 3d 41, 43, 398 N.E.2d 238, 239, fundamental principles of construction, which will decide this appeal, were provided by this court:

> "In Illinois, rules of contract construction are applicable to the construction of written leases. (*Walgreen Co. v. American National Bank & Trust Co.* (1972), 4 Ill. App. 3d 549, 281 N.E.2d 762.) The principal function of a court in construing a lease is to give effect to the intention of the parties as expressed in the language of the document when read as a whole. (*American National Bank & Trust Co. v. Olympic Savings and Loan Ass'n.* (1978), 60 Ill. App. 3d 722, 377 N.E.2d 255.) Where the language of the lease is clear and definite, there is no need for judicial interpretation. (*O'Fallon Development Co. v. Reinbold* (1966), 69 Ill. App. 2d 169, 216 N.E.2d 9.)"

In our opinion, the express language of Rule 1 and the rider to the lease clearly and unambiguously prohibit plaintiffs' use of this sign. Under Rule 1, "[n]o sign * * * *shall be displayed* * * * on any part of the outside * * * of said building * * *." (Emphasis added.) This is a blanket prohibition of signs and includes both signs already in place and signs which might be installed in the future. In addition, the rider to the lease does not, as argued by plaintiffs, create any ambiguity on this point. It simply establishes an exception to the prohibition of signs where the lessee has obtained the express written permission of the lessor. Since plaintiffs have not obtained the written permission of lessor and the lease expressly bars the display of signs, plaintiffs had no right to maintain the exterior sign on the outside wall of the building.

Similarly, in *D. A. Schulte, Inc. v. Eiger* (1917), 206 Ill. App. 59, a controversy arose over the lessee's right to maintain a sign on the leased premises. In language almost identical to the lease involved here, the lease in *D. A. Schulte, Inc. v. Eiger* provided: "No sign, picture, advertisement or notice shall be displayed, inscribed, painted or affixed * * *" without the written consent of the landlord. (206 Ill. App. 59, 60.) When the lessor removed the sign, the lessee sued for damages and obtained a temporary injunction preventing the lessor from interfering with the erection of a

sign on the leased premises. In reversing the trial court, the appellate court stated:

> "The parties, by this language [quoted above], have shown that the matter of signs upon the exterior and even upon the interior of the building is one of importance to the defendants, and they have, by as strong language as could be used, made it certain that no sign of any kind should be used, even on the interior of a window, without the express approval of the defendants in writing. We are of the opinion that even if all the allegations of complainant's bill are true, nevertheless, it [lessee] was * * * without any right to maintain a sign on the exterior of the premises in question, and that, in consequence, the order for the temporary injunction was erroneous." (*D. A. Schulte, Inc. v. Eiger* (1917), 206 Ill. App. 59, 63.)

We believe this reasoning is equally compelling here.

■■ With regard to plaintiffs' alternative argument that an implied covenant exists which allows them to maintain the exterior sign, we note that this implied covenant directly contradicts the express language of the lease prohibiting unauthorized signs. The Illinois Supreme Court has stated: "Express covenants abrogate the operation of implied covenants in accordance with the rule of interpretation, that the expression of one thing in a contract is the exclusion of another." (*Rubens v. Hill* (1904), 213 Ill. 523, 539, 72 N.E. 1127, 1131-32.) Accordingly, the courts will not allow implied agreements to overrule or modify the express agreements of the parties. (*Rubens v. Hill*; see also *Nylint Corp. v. Ingram* (1973), 11 Ill. App. 3d 122, 296 N.E.2d 392.) Since we find no reason to stray from this rule, we must reject plaintiffs' argument of an implied covenant.

Accordingly, the order of the circuit court granting summary judgment to the defendant is affirmed.

Affirmed.

SULLIVAN, P. J., and WILSON, J., concur.