HARTWIG TRANSIT, INC., Plaintiff-Appellee, *v.* ANTHONY MENOLAS-CINO, Defendant-Appellant.

First District (5th Division)   No. 81—3199

Opinion filed February 18, 1983.

Harry J. Smith, Jr., of River Grove (Lawrence J. Czepiel, of counsel), for appellant.

Jacque L. Meister, of Barrington (Sidney Z. Karasik, of counsel), for appellee.

JUSTICE SULLIVAN delivered the opinion of the court:

This is an appeal from an order granting possession of leased premises to the lessor (plaintiff) in an action brought pursuant to the Forcible Entry and Detainer Act. (Ill. Rev. Stat. 1979, ch. 57, par. 1 *et seq.*) The lessee (defendant) contends that the trial court erred in finding that he breached the terms of the lease by refusing to execute a subordination agreement presented for his signature.

Plaintiff leased commercial property (the ground lease) from Harris Trust and Savings Bank, as trustee under a land trust (Harris) and then negotiated a sublease with defendant after informing him of the ground lease from Harris. Paragraph 15 of the sublease provides in relevant part:

"15.   *Subordination to Ground Lease and Mortgage.*

This lease shall be subject and subordinate at all times to any ground or underlying lease, to the lien of any mortgage which may now or hereafter affect the leased property, and to all renewals, modifications, amendments, consolidations, replacements, and extensions thereof. The Lessee will execute and deliver any instrument which may be reasonably required by the Lessor in confirmation of such subordination promptly upon the Lessor's request. The Lessor, however, will exercise its best efforts to arrange with the holder of any such underlying lease or mortgage for an agreement that if, by dispossess [*sic*], foreclosure, or otherwise such holder, or any successor in interest, shall come into possession of the leased property, or shall become the owner of the leased property, or take over the rights of the Lessor in the leased property, it will not disturb the possession, use, or enjoyment of the leased property by the Les-

see, its successors or assigns, nor disaffirm this lease or the Lessee's rights or estate hereunder, so long as all of the obligations of the Lessee are fully performed in accordance with the terms of this lease. Lessor covenants that should it acquire title to the demised premises, any subsequent conveyance shall be subject to this lease."

The sublease further provides that if a default occurs, including "[l]essee's default in performing any of the *** covenants and agreements," the lessor may elect to terminate the lease.

Several months after the parties entered into the sublease, plaintiff, in accordance with paragraph 15 thereof, requested defendant to sign a lease amendment described by it as a confirmation of subordination, which was a substitution for paragraph 15 of the sublease. The lease amendment, in relevant part, was as follows:

"15. This Lease shall be subject and subordinate at all times to the terms of the Harris-Hartwig Lease, including any amendment thereto heretofore or hereafter made. In the event that Lessor is in default under the Harris-Hartwig Lease, then this lease shall be deemed in default and if the Harris-Hartwig Lease is terminated by default or otherwise, including agreement by the parties thereto, except for purchase by Hartwig of the premises, then this lease shall likewise be terminated and Lessee, upon ten days written notice from Harris Trust and Savings Bank, as Trustee, Lessor of the Harris-Hartwig lease, of such termination shall immediately vacate such premises. If Lessee fails to vacate said premises upon termination as above, Lessee shall be liable for all costs, including but not limited to, attorneys fees, damages, etc. as set forth in paragraphs 17 and 28(a) of this Lease."

When defendant refused to sign the amendment, after receiving notice that his lease would be terminated if he did not do so, plaintiff instituted the present action seeking to repossess the property.

At trial, plaintiff's treasurer, Hartwig, testified that he discussed a proposed lease amendment with defendant, who agreed to sign whatever was needed. After its preparation by Harris, the amendment was approved and signed by plaintiff and presented to defendant for his signature. Despite repeated requests, defendant did not sign it and gave no reason for refusing to do so. Hartwig admitted that the lease amendment omits the portion of paragraph 15 in the sublease requiring plaintiff to use its best efforts to secure a nondisturbance agreement on defendant's behalf if its ground lease terminated.

Defendant testified in effect that he did not sign the lease amendment because it did not merely subordinate the sublease to the ground lease but totally contradicted paragraph 15 in the sublease. He acknowledged that, during negotiations of the sublease, he was represented by an attorney and understood its terms.

The trial court granted possession of the premises to plaintiff, and this appeal followed.

OPINION

Defendant first contends that sublease paragraph 15 required him to confirm subordination of the lease only if the ground lease is terminated or the property is sold at foreclosure, neither of which occurred. In support of this argument, he cites an explanation of a similar subordination clause contained in a legal form book which interprets such clauses as an agreement by the lessee to attorn to a purchaser at foreclosure or to a ground lessor upon termination of the ground lease.

■ Interpretation of a lease is a question of law (*Advertising Checking Bureau, Inc. v. Canal-Randolph Associates* (1981), 101 Ill. App. 3d 140, 427 N.E.2d 1039) to be determined by this court independently of the trial court's judgment (*Illinois Valley Asphalt, Inc. v. LaSalle National Bank* (1977), 54 Ill. App. 3d 317, 369 N.E.2d 525) and in accordance with the general rules applicable to contract construction (*Sol K. Graff & Sons v. Leopold* (1980), 92 Ill. App. 3d 769, 416 N.E.2d 275). Our principal function in construing a lease is to give effect to the intention of the parties thereto (*Kurek v. State Oil Co.* (1981), 98 Ill. App. 3d 6, 424 N.E.2d 56) through consideration of the instrument as a whole (*One Hundred South Wacker Drive, Inc. v. Szabo Food Service, Inc.* (1975), 60 Ill. 2d 312, 326 N.E.2d 400) and by giving the words used by the parties their common and generally accepted meaning (*American National Bank & Trust Co. v. Olympic Savings & Loan Association* (1978), 60 Ill. App. 3d 722, 377 N.E.2d 255). However, where the language of the agreement is clear and unambiguous, we need not resort to judicial interpretation (*Hoffman v. Clark Street Roadhouse, Ltd.* (1979), 79 Ill. App. 3d 41, 398 N.E.2d 238), but extrinsic evidence may be considered to explain language which is reasonably susceptible to more than one meaning (*Great Atlantic & Pacific Tea Co. v. LaSalle National Bank* (1979), 77 Ill. App. 3d 478, 395 N.E.2d 1193).

The interpretation urged by defendant is not within the express language of paragraph 15 of the sublease, which provides that defendant was to execute and deliver any instrument "which may be reason-

ably required" in confirmation of subordination. While defendant has not argued that there is ambiguity in this provision, such a conclusion is inherent in his reliance on extrinsic evidence to establish the intention of the parties. However, even if we find some ambiguity in the language, for example, in the term "reasonably required," the limitation which defendant would have us adopt is inconsistent with paragraph 15 when considered as a whole.

■ Paragraph 15 subordinates the sublease to any ground lease, to any present or future mortgage, and to "all renewals, modifications, amendments, consolidations, replacements, and extensions thereof." Defendant argues that the last phrase refers only to mortgages, not to leases, citing *Storybook Homes, Inc. v. Carlson* (1974), 19 Ill. App. 3d 579, 312 N.E.2d 27, which holds that a qualifying phrase refers only to its last antecedent. However, it is our view that the instant case is distinguishable from *Storybook Homes*. Here, the quoted phrase is not a mere modifier, dependent for its grammatical existence on the word, phrase, or clause which it modifies; rather, it is a phrase grammatically equal with the two preceding phrases. (See Strunk & White, The Elements of Style 26 (3d ed. 1979).) Furthermore, in *Storybook Homes*, the court looked not only to grammatical structure, but also to logical meaning in interpreting the contract. Here, we believe the terms "renewal" and "modification" more logically refer to a lease than to a mortgage lien. Thus, a reading of paragraph 15 leads us to the conclusion that the sublease is subordinate to not only existing ground leases and mortgages, but also future mortgages and renewals or modifications of the ground lease. In any of these events, the lessor or mortgagee might require a confirmation that the sublease is subordinate to the new or modified mortgage or ground lease, and the narrow construction urged by defendant would preclude plaintiff from complying with such a requirement.

Moreover, the explanation suggested by plaintiff does not support his argument, for it clearly refers to the effect of subordination in general, rather than qualifying the sublessor's right to require execution of an instrument confirming subordination. The source quoted explains that, in a subordination clause the tenant "subordinates [his] rights under the lease to the rights of the mortgage or ground lessor and agrees, upon request of a purchaser at a foreclosure sale following foreclosure, or a ground lessor following termination of the underlying lease, to attorn to such purchaser or ground lessor." (Landlord-Tenant Practice I, at 5—105 (Ill. Inst. Cont. Leg. Educ. 1979).) This explanation refers to the rights of parties other than the sublessor, who would have no need to request a confirmation of subordination

once the property had been sold or his own lease terminated. Further, the explanation refers to an attornment; *i.e.*, an acknowledgment by a tenant of his obligation to a *new* landlord (*Arendt v. Lake View Courts Associates* (1977), 51 Ill. App. 3d 564, 366 N.E.2d 1096) rather than to a confirmation of subordination.

■ Defendant next contends that the lease amendment is not a confirmation of subordination, but a modification of the sublease. He maintains that the amendment deprives him of certain rights and adds certain obligations contrary to paragraph 15 of the sublease which limits plaintiff's right to demand execution of an instrument to a document confirming subordination of the sublease. Plaintiff does not dispute this, but maintains that the lease amendment is a proper confirmation. Therefore, we must determine the legal effect of the amendment, which is a question of law. (*Illinois Valley Asphalt, Inc. v. LaSalle National Bank* (1977), 54 Ill. App. 3d 317, 369 N.E.2d 525; compare *Dayenian v. American National Bank & Trust Co.* (1980), 91 Ill. App. 3d 622, 414 N.E.2d 1199 (whether document was an assignment or a sublease was a question of law).) A confirmation makes something firm or certain, or gives new assurances of truth or certainty; it may also complete or establish something which was imperfect or uncertain, or remove past doubts (Black's Law Dictionary 270 (5th ed. 1979)), whereas a modification changes something, either by adding new elements or canceling others, usually without changing the general purpose and effect of the original (Black's Law Dictionary 905 (5th ed. 1979); see *Union Electric Co. v. Illinois Commerce Com.* (1968), 39 Ill. 2d 386, 235 N.E.2d 604).

In the instant case, the lease amendment in many respects merely indicates with greater certainty the consequences of subordination, *i.e.*, that if the ground lease is terminated, defendant's sublease is also terminated. Defendant, however, maintains that certain provisions actually change paragraph 15 of the sublease. He argues that the amendment, unlike paragraph 15, makes his lease subordinate to any subsequent amendments to the ground lease and provides for termination of the sublease if the ground lease is terminated by agreement between plaintiff and Harris. As noted above, however, paragraph 15 does subordinate defendant's sublease to amendments of the ground lease; therefore, the amendment does not change this provision, but makes it clearer, which is one function of a confirmation. Furthermore, because defendant's sublease is subordinate to the ground lease, it would terminate when the ground lease terminates, whether by expiration of the term, by default, or by agreement between Harris and plaintiff. (*Bellows v. Ziv* (1962), 38 Ill. App. 2d 342,

187 N.E.2d 265.) Thus, the amendment in this respect merely makes explicit that which is implicit in paragraph 15—the consequences of subordination.

Defendant also argues that the amendment eliminates rights which he has under the sublease and adds provisions which are not contained therein. He points out that in paragraph 15, plaintiff promises to use its best efforts to obtain a nondisturbance agreement on defendant's behalf if its ground lease is terminated but that the amendment omits this promise. While admitting this change, plaintiff argues it is not a substantial right since there was no guarantee that it could deliver a nondisturbance agreement. However, we believe the nature of the change is immaterial, since the right in question was part of the bargained-for exchange, and we presume that everything in a lease was inserted deliberately and for a purpose. (*Arrington v. Walter E. Heller International Corp.* (1975), 30 Ill. App. 3d 631, 333 N.E.2d 50.) Moreover, paragraph 15 allows only a confirmation and not a modification, and under it defendant has a right to demand performance from plaintiff and may bring suit for damages if plaintiff fails to tender that performance. Because this right is lost if defendant signs the amendment, that aspect is clearly a modification.

Further, the amendment gives certain rights to Harris which are not necessarily incident to subordination of defendant's sublease and which are not contained in paragraph 15 or elsewhere in the sublease. Under the amendment, defendant must immediately vacate "upon ten days written notice from Harris," a time limit not contained in the original sublease. In addition, under the amendment, if Harris must undertake repossession proceedings, defendant becomes liable to Harris "for all costs, including but not limited to, attorney fees, damages, etc., as set forth in paragraphs 17 and 28(a) of the [sub]lease." Thus, Harris, not an original party of the sublease, is given rights thereunder for which it provides no consideration and which it did not previously have; since, in the absence of a statute or a contractual agreement, it would ordinarily not be entitled to recover attorney fees or the usual expenses of litigation. *Kerns v. Engelke* (1979), 76 Ill. 2d 154, 390 N.E.2d 859.

■ The amendment, then, has elements of both a modification and a confirmation, and defendant could not sign one part without also accepting the other. Since, under paragraph 15, plaintiff is entitled only to a confirmation, defendant did not breach the sublease by refusing to execute the amendment, and plaintiff was not entitled to possession of the premises.

Finally, we note defendant's contention that there was no proof

the amendment was reasonably required by plaintiff, since the only testimony was that Harris requested execution of the substitution.

Whether a contract has been performed according to its terms is a question of fact (*Illinois Valley Asphalt, Inc. v. La Salle National Bank* (1977), 54 Ill. App. 3d 317, 369 N.E.2d 525), and the trial court's findings will not be disturbed unless contrary to the manifest weight of the evidence (*Weigel v. O'Connor* (1978), 57 Ill. App. 3d 1017, 373 N.E.2d 421). Here, it is undisputed that Harris, plaintiff's lessor, requested a confirmation of subrogation. Such a request will normally originate with a third-party lessor or mortgagee, since plaintiff itself would have no need for such confirmation. Therefore, we do not believe that the trial court's implicit finding that plaintiff reasonably required a confirmation was contrary to the manifest weight of the evidence.

For the foregoing reasons, the order granting possession of the leased premises to plaintiff is reversed.

Reversed.

WILSON, P.J., and LORENZ, J., concur.