The Department of Public Works and Buildings of the State of Illinois for and in Behalf of the People of the State of Illinois, Petitioner-Appellee, v. Al C. Hufeld, et al., W. James Patton, Trustee, Jefferson Trust and Savings Bank of Peoria, a Banking Corporation, Trustees, County of Peoria, and Unknown Owners, Defendant-Appellants.

Gen. No. 65–7.

Third District.

March 11, 1966.

Mathis, Sloan & Littler, and Cassidy & Cassidy, both of Peoria, for appellants.

William G. Clark, Attorney General, of Chicago, for appellee.

STOUDER, J.

This action was commenced by Appellee, Department of Public Works and Buildings of the State of Illinois, under the provisions of the Eminent Domain Statute. The Circuit Court of Peoria County entered judgment on the verdict of a jury awarding Appellant $102,828 for land taken and $36,833 for damage to land not taken.

In November 1958, Appellant purchased the approximately 100 acre tract involved. The tract is generally rectangular extending on its northern boundary 1,010 feet along Farmington Road. The tract extends southerly $\frac{7}{10}$ of a mile to Illinois Route 116. The property is located 3 miles west of the city limits of the city of Peoria and is 5 miles from the Peoria County courthouse. At the time Appellant purchased the property, a small race-track was located on the northern portion of the premises and the balance was used for agricultural purposes. The property was zoned for residential use, a part for $\frac{1}{2}$ acre residential sites and the balance for smaller residential lots. Appellant, a licensed real estate broker, purchased

the property solely for residential real estate development purposes. After the purchase, the zoning of the premises was modified, permitting the entire tract to be used for the smaller residential lots, excepting two areas along Farmington Road, which were reclassified to permit commercial uses. The neighborhood is either residential or undeveloped land, one residential subdivision being located immediately to the west of the property and several others being located on the north side of Farmington Road.

In its plan for development of the tract, Appellant divided the property into three areas. A plat of area 1, being the most northerly 16 acres, was prepared and recorded. Area 1 was divided into 31 residential lots and 2 out lots, designated for commercial uses, said out lots fronting on Farmington Road and being located in the northeast and northwest corners of the property. At the time of the institution of this proceeding on October 10, 1961, the lots had been staked out, streets and curbs constructed and utility service extended into the area. Three houses had been constructed and fourteen of the lots had been sold, reducing the acreage, then owned by Appellant, to approximately 8½ acres.

A plat of the middle portion of the tract consisting of 37 acres, which we shall refer to as area 2, was prepared and recorded. At the time of the institution of this proceeding nothing had been done in area 2 except rough grading.

Although a plat was prepared of the most southerly 47 acres, which we shall refer to as area 3, it was never recorded. Appellant claims that the plat was not recorded in order to avoid assessment of real estate tax on an individual lot basis. It appears however, that this plat was not prepared until approximately one month before the institution of this proceeding. At the time of the institution of this proceeding nothing had been done in area 3.

124

The above plans for the development of the entire area contemplated 193 residential lots, 2 commercial lots and a park of approximately 5 acres along the southern portion of the tract.

This proceeding was instituted on October 10, 1961, to acquire approximately 62 acres of the tract owned by Appellant to construct a highway. The part to be taken crosses all four boundaries of the property. The remainder of the property, after the taking and improvement, consists of a landlocked area in the southeast corner, an area in the southwest corner with no practical access and areas in the northeast and northwest corners with limited access, rendering each inappropriate for the original intended commercial use.

At the hearing, each party presented four valuation witnesses. All witnesses agreed that the highest and best use of the property was that of residential use and residential subdivision development either actual or potential.

Each of Appellee's valuation witnesses used the same approach in arriving at his opinion of value. The individual characteristics of each area were considered in arriving at a value of the whole tract. Although the values expressed by Appellee's valuation witnesses presented a range of difference of approximately thirty percent, the testimony of witness Thiemann is illustrative. He testified that in his opinion the entire tract had a value of $140,000. He arrived at this opinion by considering that the 17 lots still owned by Appellant had a completed value of $3,500 each or a gross value of $59,500. He then deducted his estimated cost of development of $26,000 leaving a net value, of area 1, of $33,500. He considered areas 2 and 3, a total of 83 acres, to be worth $1,000.00 per acre or $83,000 and that the two commercial lots were worth a total of $23,500. In his opinion the value of the 62 acres taken was $80,000 and the value of the remainder $60,000. His estimate as to the total damage to the remainder was $30,000, based

125

on diminution in value of each of the four portions comprising the remainder.

Appellee's valuation witness Maurer, placed a value on area 1 of $65,750. He considered the value of area 2 to be $1,000 per acre and that of area 3, $700 per acre. His value of the part taken was $92,375 with the remainder being damaged in the amount of $32,650.

Summarizing the testimony of Appellant's valuation witnesses, the opinions of each concerning the value of the land taken and damage, ranged from $482,056 to $580,496. Each of Appellant's witnesses, other than Weinstein, testified in terms of present market value. In arriving at a valuation of the entire tract they estimated the value of each lot in the entire tract on a fully developed basis, including the developed lots in area 1, the platted lots in area 2 and the proposed lots in area 3. Each then deducted his estimate of development cost and an allowance for the period of time during which the lots would be sold in arriving at his present value.

Appellant, in seeking a reversal of the judgment of the lower court, contends: first, that under the circumstances it was error for the court to hold that the constitutional right of Appellant to just compensation for property taken or damaged, was satisfied by measuring such compensation in terms of fair cash market value; second, that the court erred in failing to strike testimony of Appellee's valuation witnesses when the opinions were based on hearsay; third, that the court erred in its rulings on evidence of comparable sales; fourth, that the court erred in admitting evidence of the price paid for the property by Appellant; fifth, that the court erred in excluding the valuation opinion of one of Appellant's witnesses; sixth, that the court erred in restricting Appellant's cross-examination of Appellee's valuation witness and seventh that the court erred in the giving and refusal of instructions.

126

Appellant strenuously urges that his right to just compensation was violated because, under the circumstances, his recovery based on the fair cash market value of his property did not constitute just compensation. Appellant argues that the "subdivision theory of valuation" is the only approach which produces just compensation. Under this theory once a subdivision has been planned, the value of the subdivision is to be determined by estimating the sales price of each lot as and when completed and sold, the gross value of the subdivision being the total of the values of the individual lots. From the gross value are deducted estimated cost of development, expenses of promotion, taxes, and an adjustment relating to the expected period required to sell the lots. Under this theory the net value so produced is the value of the subdivision. Appellant concedes by his argument that this value is not the fair cash market value of the subdivision. Rather he argues that the subdivision approach is the only appropriate method of determining just compensation.

 In Illinois, our courts have frequently considered the principle that private property shall not be taken for public purposes except on payment of just compensation. Courts of review have repeatedly held that in the interest of protecting both the property owner and the public, this principle requires that after the taking and improvement the property owner shall be neither worse off nor better off. In other words, the property owner must be recompensed for any loss that he sustains. City of Chicago v. Farwell, 286 Ill 415, 121 NE 795. The property owner's loss is measured by the value of the property taken or damaged, namely its fair cash market value. The term "fair cash market value" has been so often defined by our courts and the principles and methods of its determination have been so often enunciated, they do not require restatement. Suffice it to say the uses of real estate both actual and potential, insofar as they

127

relate to present value, are important and appropriate considerations. Every person owning real estate, particularly that devoted to business purposes, ordinarily expects to realize some gain, benefit or advantage in the future from the continued ownership of such property. However, the amount of the expected or hoped for gain, benefit or advantage is not the present value of the property. It is only to the extent such factors bear on present value that they are properly considered.

■ In examining the "subdivision theory of valuation," as proposed by Appellant, we find it is basically a projection of future values and advantages which in and of themselves are considered to be the value of the property. Although such valuation or method thereof may be appropriate for some purposes, such as the apportionment of cost or profits, we do not deem it to be either an actual or appropriate measure of just compensation.

Appellant contends that because Appellee's valuation witnesses employed the "subdivision theory of valuation," in their opinions of the value of area 1, this is an admission of the validity of the valuation approach and it logically follows the same method should have been applied to the tract as a whole. Valuing a group of developed lots, taking into account the individual values and cost of development, does not necessarily involve the approach proposed by Appellant. In any event, the character of the actual use and potential use of areas 2 and 3 was markedly different from that of area 1 and under these circumstances different considerations were involved. Testimony of Appellee's witnesses appropriately considered the actual and potential uses of areas 2 and 3 on a different basis than those of area 1.

■ The only exception to the "market value" concept by our courts is the "special use doctrine." Under this exception it is well recognized that the use of property may be so unique or special that it is not ordinarily bought or sold and that therefore no "market" exists. City of

128

Chicago v. Farwell, 286 Ill 415, 121 NE 795. Appellant does not contend that a subdivision or a subdivision development is such a use nor does he rely on Illinois cases discussing this principle; Appellant relies instead on U. S. v. Miller, 317 US 369, 374, 87 L Ed 336, 345; U. S. v. Toronto, 338 US 396, 94 L Ed 195 and U. S. v. Cors, 337 US 325, 332, 93 L Ed 1392, 1399.

■ These cases do recognize that market value may not always be an appropriate measure of the loss to which a property owner is entitled as compensation but they are not inconsistent with the "special use" exception as applied by our Illinois courts. The use of property for a subdivision or subdivision development is not a unique or special use of property. On the contrary, it is a frequent, common and ordinary use thereof.

■ Appellant contends that the court erred in failing to strike the testimony of Appellee's valuation witnesses since their opinions were based on hearsay. These witnesses testified that they had examined court records, talked with other realtors and confirmed other sales by talking to buyers and sellers. However they considered such investigations as part of their general knowledge and experience. Each of the witnesses testified that he was familiar with the property in question as well as with the general real estate business in the Peoria area. Any person acquainted with a particular property may testify as to its value even though he is not engaged in the buying and selling of similar properties in that locality. Department of Public Works and Buildings v. Divit, 25 Ill2d 93, 182 NE2d 749. That the general knowledge and experience of an expert witness may be based in part on hearsay does not make such opinion incompetent. No error was committed by the court in its admission of the testimony of Appellee's valuation witnesses.

■■ We next consider the alleged error committed by the court in admitting and refusing evidence of sales of other properties, in permitting testimony of the

purchase price paid by Appellant, and in permitting Appellee's valuation witnesses to testify as to value of areas 2 and 3 on an acreage basis. The McCluggage tract, about 130 acres, was sold in 1959 for approximately $400 per acre. The tract is located one mile farther west from Peoria than the subject property on the same side of Farmington Road. Mrs. McCluggage testified that in 1958 a plan to plat the northern portion was made by an engineer in conjunction with the proposed sale of lots by a broker. Apparently the lots were staked out but after the death of the broker the project was abandoned. Appellant argues that neither the McCluggage property, at the time of its sale in 1959, nor the subject tract, at the time of its purchase by Appellant, were similar in that the actual use of each was for agricultural purposes. Appellant relies on City of Chicago v. Pridmore, 12 Ill2d 447, 147 NE2d 54, which holds that the sale of a developed subdivision was not a proper comparable sale relevant to the determination of value of raw undeveloped acreage. Appellant argues that the converse of this rule is applicable to the instant case. However the validity of this argument depends on an assumption which is not necessarily controlling under the facts in the record, namely that areas 2 and 3 were developed subdivisions. Merely planning or platting land does not change the character of the land to the extent that valuation witnesses are limited to such considerations. Union Elec. Power Co. v. Sauget, 1 Ill2d 125, 115 NE2d 246. The actions of the owner of the McCluggage tract prior to its sale in 1959 indicate that the tract had residential subdivision development potential. Likewise Appellant's admitted sole purpose in buying the subject tract was for its residential subdivision development potential. Areas 2 and 3 were also characterized as having the same residential subdivision development potential. Under these circumstances we believe that the court did not abuse its discretion in admitting this evidence and for the same

reasons that it did not act improperly in failing to exclude testimony of Appellee's valuation witnesses. We likewise believe that the court did not abuse its discretion in denying admission of evidence concerning the sale of property known as the "Hickory Hills" property. The evidence shows that "Hickory Hills" was dissimilar in that it was only 3½ acres located 5 miles north of Peoria in a faster developing area.

■ Appellant contends that it was error to exclude the opinions of his valuation witness, Weinstein. We have examined the record of his testimony and can only agree with the Trial Court, that in the context of the issues to be determined by the jury, his testimony was so confusing that no clear conclusion could be drawn therefrom.

■ We consider Appellant's objection to the court's ruling on his cross-examination of Appellee's valuation witness Manning not well-founded. Manning, a real estate broker, had developed a subdivision known as "Wardcliff," located northwest of Peoria. Examination of this witness revealed the dissimilarities between "Wardcliff" and the subject property. It was neither contended in the court below nor is it contended in this court that the purchase of "Wardcliff" was admissible as a comparable sale. On cross-examination Manning, in explaining his reasons for his opinion of value, made statements concerning the price he would or would not pay for property under certain conditions, some of such conditions being applicable to "Wardcliff." To contradict his assertions Appellant then asked the witness what he had paid for "Wardcliff." Appellee's objection to the question was sustained. Appellant now contends that since Manning's prior purchase of "Wardcliff" contradicted his assertions now made, the question was proper impeachment. We do not believe that the introduction of evidence of dissimilar sales under the guise of discrediting or impeaching a witness's testimony is proper (Chicago & St. L. R. Co. v. Kline, 220 Ill 334, 77 NE 229). Permitting such testi-

mony would allow the jury to consider evidence otherwise improper and irrelevant to the issues.

Lastly, we consider objections to instructions given and refused. The objections to the instructions, given at the request of Appellee, are that they limit and define just compensation in terms of fair cash market value. Since we have discussed this argument elsewhere in this opinion it will suffice to say that the instructions, to which objection was made, correctly stated the law applicable to the case. Likewise Appellant's disagreement with the court's refusal to give his instruction Number 1 is basically the same argument which we have heretofore decided adversely to Appellant. Instruction Number 1 was a correct statement of the constitutional requirement concerning just compensation. However the subject was adequately covered in other instructions and Appellant's objection is essentially that he was not permitted to support his theory of compensation based on values other than fair cash market value.

■■■ Appellee's instruction Number 3 provided "The Court instructs the jury that the highest and best use of the property in question in this case is its present actual use and you have no right to consider it for any lesser or lower use." In other instructions the jury was appropriately instructed concerning the highest and best use of the property, in its relation to the jury's determination of fair cash market value. Since potential residential subdivision development was an appropriate consideration in determining the highest and best use of the property we believe that an instruction referring only to the actual use of the property is misleading and properly refused.

Finding no error in the judgment of the Circuit Court of Peoria County the judgment is affirmed.

Judgment affirmed.

CORYN, P. J. and ALLOY, J., concur.