MIDWEST BANK AND TRUST COMPANY, Trustee, Plaintiff-Appellee, v. SCOT LAD FOODS, INC., *et al.*, Defendants-Appellants.

First District (4th Division)   No. 85—1728

Opinion filed January 16, 1986.

Altheimer & Gray, of Chicago (Kenneth R. Gaines and Judy L. Smith, of counsel), for appellant Scot Lad Foods, Inc.

James E. Manning, of Chicago, for appellant A. T. Hopkins.

Nagle & Gallagher, of Chicago (Daniel Nagle, of counsel), for appellee.

PRESIDING JUSTICE LINN delivered the opinion of the court:
This is an action brought pursuant to the Illinois forcible entry and detainer act (Ill. Rev. Stat. 1983, ch. 110, par. 9—101 *et seq.*). Plaintiff Midwest Bank and Trust Company, as trustee u/t/a No. 82—08—3926 (Midwest), filed a complaint seeking possession of a commercial storefront. Defendant Hopkins Foods, Inc. (Hopkins), currently operates its business in that storefront and is a sublessee of Scot Lad Foods, Inc. (Scot Lad). Midwest's complaint alleges that Hopkins violated a covenant of the lease by failing to properly maintain the lights in an adjacent parking lot. After both parties moved for summary

judgment, the trial court ruled in favor of Midwest and awarded it possession.

This appeal raises two issues: (1) whether Hopkins owes a duty to repair the lights under a provision of the lease requiring it to undertake "parking lot maintenance"; and (2) whether, under the lease agreement, Hopkins received proper notice of its obligation to repair the lights.

BACKGROUND

In 1961, Midwest and The Great Atlantic and Pacific Tea Company, Inc. (A&P), entered into a lease under which A&P agreed to rent a storefront located at 7535 South State Street in Chicago. The lease set forth the parties' rights and obligations but made no mention as to who was to be responsible for maintaining the lights in the storefront's adjacent parking lot. Subsequent to the execution of the lease, however, Midwest and A&P entered into an oral agreement whereby A&P accepted full responsibility for maintaining the lights in the parking lot. As a result of the oral agreement, A&P repaired and maintained the parking lot lights during its occupation of the premises.

In 1982, A&P assigned its lease to Scot Lad. The lease assignment contained a clause stating that Scot Lad agreed to accept all the covenants observed by A&P including "parking lot maintenance." Soon after the assignment, the lights in the parking lot malfunctioned and were repaired by Scot Lad without incident.

Scot Lad subsequently subleased the premises to Hopkins on July 27, 1982. No problems arose until November 23, 1984, when the lights in the parking lot malfunctioned. Hopkins immediately took steps to have the lights repaired. The repair company Hopkins initially called did not have the proper equipment to service the lights. Hopkins next contacted two other electrical contractors. The first contractor arrived on December 17, 1984, but was of no assistance for his lift truck failed to operate. The second company, the Hyre Electric Company, could not perform the work until January 1985. Hopkins failed to contact any other contractor, and consequently, the lights remained in disrepair for the month of December 1984.

In the meantime, however, the lack of lighting caused sales at Walgreens, a store situated next to Hopkins and sharing the same parking lot, to decrease. This, in turn, caused the rent received by Midwest (which was based on a percentage of Walgreens' gross sales) to decline. On December 26, 1984, Midwest phoned Hopkins and demanded that the lights be repaired immediately. The lights, however,

remained in disrepair, and on January 5, 1985, Hopkins received a letter from Midwest notifying Hopkins that its failure to repair the lights constituted a breach of the lease agreement. Finally, during the second week of January, Hopkins paid for the lights to be repaired at a cost of $3,798.94.

On March 5, 1985, Midwest filed this suit to obtain possession of the premises. The trial court ruled in Midwest's favor finding that Hopkins' failure to repair the lights for six weeks (from November 23, 1984, to the second week of January) constituted a breach of the lease.

OPINION

I

In construing a lease, our primary objective is to determine and give effect to the intent of the parties. (*Kurek v. State Oil Co.* (1981), 98 Ill. App. 3d 6, 424 N.E.2d 56.) Where a lease provision is ambiguous, its interpretation is a question of law. (*Pioneer Trust & Savings Bank v. Lucky Stores, Inc.* (1980), 91 Ill. App. 3d 573, 575, 414 N.E.2d 1152.) In determining the meaning of an ambiguous provision, evidence such as the position of the parties, the surrounding circumstances existing at the time of execution, and of the parties' subsequent conduct may be considered in order to explain the ambiguity. *Hartwig Transit, Inc. v. Menolascino* (1983), 113 Ill. App. 3d 165, 168, 446 N.E.2d 1193.

In the case at bar, we agree with the trial court that it was Scot Lad's, and therefore Hopkins' as a sublessee, duty to maintain the parking lot lights. As mentioned above, the lease contains a provision which states that it is the tenant's duty to undertake "parking lot maintenance." While this provision is somewhat ambiguous, we find the conduct of Scot Lad and Hopkins sufficient to demonstrate that the parties intended to include repairing the lights within the tenant's obligation to undertake "parking lot maintenance."

We first note that for the past 24 years, it has been the tenant, not the landlord, who has always maintained the parking lot lights. In addition, it was Scot Lad, not Midwest, who previously paid for the lights to be repaired when they malfunctioned in 1982. Furthermore, in his affidavit, A.T. Hopkins, the president of Hopkins Foods, Inc., stated that during the second week of January 1985 he arranged and paid for the repair of the lights "in the belief that it was the responsibility of Hopkins Foods, Inc., to do so." Considering all of this evidence, we believe the parties' conduct sufficiently demonstrates that

"parking lot maintenance" includes a duty on Hopkins' part to repair the parking lot lights.

## II

■ Where the language of a lease is clear and definite, on the other hand, there is no need for judicial interpretation. (*Hoffman v. Clark Street Roadhouse, Ltd.* (1979), 79 Ill. App. 3d 41, 398 N.E.2d 238.) An unambiguous provision will be enforced as written, and a reviewing court will not rewrite the contract under the guise of construction. *Stull v. Hicks* (1978), 59 Ill. App. 3d 665, 375 N.E.2d 981.

In the present case, the lease is clear regarding the notice due the tenant should the tenant default on any of its covenants. In this regard, Clause 22 states:

"22. If any rent shall be due and unpaid, or if default shall be made in any of the covenants herein contained by the Lessee, *the Lessor will notify the Lessee of such default in writing*, addressed to the Lessee's above designated office address and forwarded by registered mail, *and unless such default be remedied as soon as may be reasonably possible*, it shall be lawful for the Lessor to re-enter the said premises and to again have and enjoy the same, but this provision is not applicable to a bona fide dispute as to the Lessee's liability to make repairs." (Emphasis added.)

Thus, before Hopkins can be considered to be in breach of the lease, Midwest must: (1) send written notification to Hopkins identifying the alleged default; and (2) grant Hopkins a reasonable period of time to cure the default.

■ In addressing this issue, the trial court found that Hopkins breached the lease by allowing the lights to remain in disrepair for six weeks. The six-week period ran from the time the lights first malfunctioned, November 23, 1984, to the point at which they were finally repaired, the second week of January 1985. The trial court, however, erred in failing to consider the notice procedure contained in Clause 22. Under the explicit terms of the lease, Hopkins had a reasonable period of time to cure any alleged default *after he received a written notice* from Midwest.

■ The parties in the instant case agree that only a question of law is involved. As a question of law, we can review the notice provision of the lease independent of the trial court's judgment. (*Bohnen International, Inc. v. Liberty Mutual Insurance Co.* (1983), 120 Ill. App. 3d 657, 458 N.E.2d 644.) It is our view that whether we use the sending date of Midwest's letter, December 31, 1984, or the date on

which Hopkins received the letter, January 5, 1985, Hopkins repaired the lights within a reasonable period of time. Considering the type of work required and the fact that it was the holiday season, we believe that Hopkins complied with its obligations under the lease by repairing the lights during the second week of January.

Accordingly, the trial court's decision finding Hopkins in breach of the lease and awarding possession to Midwest is reversed.

Reversed.

JOHNSON and McMORROW, JJ., concur.