M. H. STEIN, Plaintiff-Appellee, v. GAREL SPAINHOUR *et al.*, Defendants-Appellants.

Fourth District   No. 4—87—0674

Opinion filed March 30, 1988.

William F. Tracy II, of Miller, Tracy, Braun & Wilson, Ltd., of Monticello, for appellants Garel Spainhour and Verneal Spainhour.

Kelly D. Long, of Hillsboro, for appellant T. A. Spainhour.

Lowe, Moore, Susler, McNutt & Wrigley, of Decatur (Marshall A. Susler and William A. McNutt, of counsel), for appellee.

JUSTICE McCULLOUGH delivered the opinion of the court:

The defendants, Garel Spainhour, T. A. Spainhour, and Verneal Spainhour, appeal the judgment of the circuit court of De Witt County finding in favor of the plaintiff, M. H. Stein, on a claim of breach of lease. The defendants maintain: (1) the court erroneously found an implied covenant to operate a business on the leased prem-

ises; (2) the court failed to properly consider the sale of the building and equipment; and (3) the court improperly assessed damages.

We affirm.

On January 31, 1974, the plaintiff entered into a 15-year lease with the defendants. Under the terms of the lease, the defendants agreed to pay rent of "One Hundred Fifty Dollars ($150.00) per month or 6% of net sales after sales tax from the business conducted on the premises, whichever sum is greater." It was further stipulated that:

> "The business to be conducted on said premises shall be a sale of Dairy Queen confections. At the present time a Dairy Queen franchise has not yet been approved for the Lessees, and if such Dairy Queen franchise has not been awarded to the Lessees within a reasonable time hereafter, then this lease shall be null and void."

The defendant-lessees also covenanted to purchase public liability and fire insurance; to pay all utilities; to repair and maintain the leased premises at their own expense; and to pay all property taxes assessed against the building. The lessees also agreed to pay any reasonable attorney fees incurred by the lessor as a result of a default of the terms of the lease.

At the time of the execution of the lease, the parties were negotiating the sale of the building and equipment. In this respect, the lease provided:

> "At the present time this lease includes the lot legally described above and the business building located thereon. However, the parties are now negotiating with each other whereby the Lessees may purchase the building only from the Lessors. In the event such a sale takes place, then the terms of this lease, and the rental due thereon will remain the same even though the building has been sold to the Lessees and the rental is for the lot only."

The defendants were granted a Dairy Queen franchise and commenced business on the leased premises in February 1974. Rent was always paid based on the percentage of sales, as the sales exceeded the minimum amount.

In May 1974, the defendant T. A. Spainhour and his spouse, Jamie J. Spainhour, entered into an installment contract with the plaintiff for the purchase of the building and equipment. Although the contract provided for final payment to be made in May 1989, the defendants tendered final payment in October 1983. On November 30, 1983, the defendants ceased operating a Dairy Queen on the

leased premises.

In 1983, the defendant T. A. Spainhour constructed a new building approximately one block from the leased premises. The defendants began and continue to operate a Dairy Queen at the newly constructed location since operation on the leased premises ceased. Since November 1983, the defendants continued to tender a check each month for the minimum rental rate of $150. The plaintiff, however, returned the checks claiming entitlement to a percentage rent.

Following a bench trial, the circuit court found the terms of the lease to be "very straight forward and simple" and that the parties voluntarily entered into the lease agreement. Citing the case of *Simhawk Corp. v. Egler* (1964), 52 Ill. App. 2d 449, 202 N.E.2d 49, the court found an implied covenant to operate a Dairy Queen business on the leased premises during the term of the lease. Consequently, the court found the cessation of business to be a breach of the lease.

With respect to damages, the court deemed the defendants liable in an amount equal to 6% of the average sales, based upon the figures available for the past five years (1979 through 1983), for the remainder of the term of the lease, which amounted to $66,067.60. On June 24, 1987, the court further assessed attorney fees and court costs against the defendants in an amount of $11,177.39. From these orders, the defendants appeal.

■■ When construing a lease, the primary objective of the court is to determine and give effect to the intent of the parties. (*Anest v. Bellino* (1987), 151 Ill. App. 3d 818, 503 N.E.2d 576; *Midwest Bank & Trust Co. v. Scot Lad Foods, Inc.* (1986), 140 Ill. App. 3d 166, 488 N.E.2d 676.) Where the language of the lease is clear and definite, it should be enforced as written and a reviewing court should not rewrite under the guise of construction. *Midwest*, 140 Ill. App. 3d 166, 488 N.E.2d 676.

■■ Where a lease specifies a particular use of the property and rent is to be computed on a percentage of profit basis, there is an implied covenant to occupy and use the premises for the specified purpose and in a manner which will generate the amount of rent contemplated by the parties. See *Stoddard v. Illinois Improvement & Ballast Co.* (1916), 275 Ill. 199, 113 N.E. 913; *Seggebruch v. Stosor* (1941), 309 Ill. App. 385, 33 N.E.2d 159; *Fox v. Fox Valley Trotting Club* (1956), 8 Ill. 2d 571, 134 N.E.2d 806; *Simhawk Corp. v. Egler* (1964), 52 Ill. App. 2d 449, 202 N.E.2d 49.

In *Simhawk*, cited by the circuit court herein, the lease provided for a rent of $250 per month plus a percentage of profits from the

operation of a shoe store. (*Simhawk*, 52 Ill. App. 2d 449, 202 N.E.2d 49.) The lessee, who ceased operating a shoe store on the premises and moved his business two doors away, was found in breach of the lease. The court stated that the lessee was obligated to pay the percentage of profits as stipulated in the lease in addition to the $250 per month. Based upon the reasoning enunciated in the cases of *Fox* and *Stoddard*, the court concluded that "the parties intended that plaintiff's premises were to be used only as a shoe store and failure to continue operation of such a store constituted a clear breach of the express terms of the lease." *Simhawk*, 52 Ill. App. 2d at 456, 202 N.E.2d at 52.

■ The language of the lease here is clear and unambiguous and its terms must be given effect. It is very apparent that the parties entered into the lease with the intent that the defendants operate a Dairy Queen on the premises. The lease was expressly contingent upon the defendants obtaining a Dairy Queen franchise. The percentage rent indicates an intent that the business be operated at a profit. The fact that defendants always paid a percentage rent as opposed to the stated minimum gives further support to the covenant to operate a business on the premises. Thus, the defendants' failure to use reasonable diligence in conducting such a business constitutes a breach of the lease.

The defendants' reliance upon the cases of *Marquette National Bank v. Walgreen Co.* (1984), 126 Ill. App. 3d 680, 467 N.E.2d 954, and *Chicago Title & Trust Co. v. Southland Corp.* (1982), 111 Ill. App. 3d 67, 443 N.E.2d 294, is misplaced. In those cases, the court refused to imply a covenant to continue the operation of business on the leased premises. In *Marquette*, however, the lessee exercised his right under the lease to sublet and move his business to a new location. Since the percentage rent provision in the lease was for "cash receipts of sales on the said leased premises" the lessee was no longer obligated for rent based upon sales. The court noted that allowing a tenant to assign the leased premises was inconsistent with an implied covenant to continue business. *Marquette*, 126 Ill. App. 3d at 683, 467 N.E.2d at 957.

In *Chicago Title*, the court refused to impose an implied covenant to continue business on the leased premises based upon the broad permissive language contained in the lease. The lease gave the lessee the right to sublet or assign and further specifically stated that the premises could be used "for any other lawful purpose." (*Chicago Title*, 111 Ill. App. 3d at 70, 443 N.E.2d at 296.) The lease herein is distinguishable, as it contained an express provision prohibiting as-

signment or sublease without the consent of the lessor. It further specified the type of business for which the premises were being let.

The defendants argue that the lease provision of a monthly amount "or" percentage of sales distinguishes this case from *Fox* and *Simhawk*. The use of the word "or" does not change the responsibility of lessee. The lessee was required to pay $150 per month or 6% of net sales after sales tax, whichever sum was "greater." *Simhawk* is consistent with holding the defendants responsible here.

▪ The defendants next contend that the sale of the building and equipment constituted a constructive severance thereby rendering the building not subject to the lease or any implied covenant to operate a business. We find this assertion without merit.

During trial, the defendants presented evidence of the purchase of the building and equipment. The court, however, found this evidence immaterial and irrelevant to the alleged breach of lease. It was specifically stipulated in the lease that the parties were negotiating a sale of the building and this sale would not in any way affect the terms of the lease. Moreover, the defendants continued to operate a Dairy Queen on the leased premises for some 10 years after the execution of the installment contract for the sale of the building and equipment. As such, any argument of severance now is untimely, and furthermore, without legal support.

▪ The defendants finally assert that the record is completely devoid of any evidence in support of the court's assessment of damages. The defendants also argue that there was no evidence on behalf of the lessor regarding the mitigation of damages pursuant to section 9—213.1 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 9—213.1).

In determining the amount of damages, the court took 6% of the average sales for the past five years of business and applied that amount to the remaining term of the lease. During trial, the defendants presented evidence of total sales for each month and year they operated the Dairy Queen on the leased premises. The court took the average of the gross sales for the five years preceding the breach of lease and applied the 6% factor to that average, finding the average annual rent paid by the lessees to be an amount equal to $13,213.52.

Initially, as noted by the plaintiffs, the statutory requirement of mitigation of damages by a lessor became effective after the breach occurred herein. Although the concept of mitigation of damages was espoused by the courts prior to statutory codification of the concept, this is not the type of case which factually lends itself to the concept. The defendants continued to attempt to tender rent in the minimum

amount and did not surrender the premises. Consequently, this was not the type of situation where mitigation was possible. Additionally, the defendants did not assert the lack of mitigation of damages at trial and, as such, have waived the issue.

■ The fixing of damages is a function of the trier of fact and should not be disturbed upon review unless there is no evidence in support of the verdict or it is obviously the result of passion or prejudice. *Pioneer Trust & Savings Bank v. Zonta* (1981), 96 Ill. App. 3d 339, 421 N.E.2d 239.

The court herein applied the same formula as was utilized in the cases of *Fox* and *Simhawk* in assessing the amount of damages. (*Fox*, 8 Ill. 2d 571, 134 N.E.2d 806; *Simhawk*, 52 Ill. App. 2d 449, 202 N.E.2d 49.) The court applied the percentage formula to the reasonably expected net sales of the defendants for the period remaining in the lease. As noted by the court in *Fox*:

> "The measure of damages would be the compensation for the loss suffered as a result of the breached lease, taking into consideration the history of the operations on plaintiff's premises ***." *Fox*, 8 Ill. 2d at 578, 134 N.E.2d at 810.

■ The nature of the type of lease involved contemplates a measure of damages that will adequately compensate for the cessation of business in light of an implied covenant to continue operation on the leased premises. It was well within the trial court's discretion to fix damages in this manner. There was evidence presented in support of the findings as to damages, and as such, we will not interfere with the award.

Based on the foregoing, the decision of the circuit court of DeWitt County is affirmed.

Affirmed.

GREEN, P.J., and KNECHT, J., concur.