HARRIS TRUST AND SAVINGS BANK, as Trustee, Plaintiff-Appellant, v. La SALLE NATIONAL BANK, as Trustee, *et al.*, Defendants-Appellees.

First District (5th Division)   No. 1—88—3413

Opinion filed December 28, 1990.

Kevin M. Forde, Ltd., of Chicago (Kevin M. Forde and Mary Anne Mason, of counsel), for appellant.

Louis R. Hegeman and Jay D. Stein, both of Gould & Ratner, of Chicago, for appellees.

JUSTICE COCCIA delivered the opinion of the court:

I

This appeal arises from a dispute between a lessor and its lessees regarding the interpretation of a lease. The circuit court adopted lessees' construction of the lease, granted their motion for judgment on the pleadings, and denied lessor's motion for partial summary judgment. The circuit court then granted lessor's request to certify the question of the lease's interpretation to us, and we allowed its appeal.

II

Plaintiff-lessor Harris Trust & Savings Bank (lessor) filed its amended complaint on February 5, 1986. Lessor alleged that it was trustee under a land trust and that defendant La Salle National Bank was trustee under four other trusts. Six persons, as nominees, were also named as defendants, along with a development company. (We shall collectively refer to all defendants as lessees.) Lessor further alleged that on May 1, 1969, it and Chicago Title & Trust Company, as lessee, executed a lease for certain real estate located in Chicago. Copies of the 51-page lease and an 11-page addendum, executed that same day, were attached to the amended complaint. The lease and addendum contemplated that either party could request a reappraisal of the property, for the ultimate purpose of raising or lowering the rent based on the fluctuation of the land's value. If the parties could not agree about the land's value, they were to appoint appraisers. Section 2.02 of the lease set forth the standards by which the appraisers would be governed in making their appraisals:

> "The appraiser or appraisers so selected shall be instructed that in making such appraisal that the Land is to be valued as vacant land, without regard to the existence of any Improvements at the time located thereon, to the existence of this Lease, or to the fact that the Land is being used in conjunction with the Adjacent Parcels."

On June 29, 1981, lessor went on to allege, it served notice on the lessees, requesting a reappraisal to determine the amount of additional annual rental. Pursuant to the lease, lessor and lessees each designated an appraiser. Lessor averred that the appraisers were unable to agree upon a valuation of the real estate, due to an actual controversy concerning the rights of the parties under the lease. Because of the inability to agree upon the meaning of section 2.02, lessor continued, the parties were unable to agree upon the instructions to be given their appraisers, so no reappraisal had been made. Lessor claimed that lessees took the position that section 2.02 precluded consideration by the appraisers of the possibility that the parcel could be used in conjunction with adjoining parcels—"the possibility of assemblage." This position, lessor asserted, was contrary to the clear meaning of the lease language, to the intent of the parties to the lease, and to generally accepted appraisal standards used to value parcels of commercial real estate. In addition, failure to take into account the land's highest and best use, including the possibility of assemblage, when appraising it resulted in an artificially low valuation of the property, thereby depriving lessor of additional rents. Lessor prayed for a declaration of the parties' rights under the lease and judgment in the amount of additional annual rent, plus interest from May 1, 1981.

In their answer to lessor's amended complaint, lessees admitted that the parties were unable to agree upon the meaning of section 2.02. However, lessees denied that lessor's interpretation of section 2.02, requiring the appraisers to consider the possibility of assemblage, was correct.

Accordingly, lessees moved for judgment on the pleadings, pursuant to section 2—615(e) of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—615(e)). Lessees confirmed that lessor owned the land in question and went on to state that they were the current tenants, being the assignees of the original tenants. The lease entered into between lessor and lessees' predecessors in interest demised the premises until August 31, 2067, lessees noted. The parcel at issue was one of four parcels on which the office building known as Mid-Continental Plaza had been constructed, after the lease was executed. Lessees argued that the appraisers designated by the parties could not agree because lessor, contrary to the lease's language, incorrectly instructed its appraiser. Specifically, lessees contended, lessor's interpretation—that the appraisers had to consider the possibility of assemblage—was incorrect as a matter of law. In effect, lessees maintained, lessor was asking the appraisers to consider the possibility of that which was impossible; that is, if under section 2.02 the appraisers

could not consider the fact of assemblage ("the fact that the Land is being used in conjunction with the Adjacent Parcels"), then they could not consider the possibility of assemblage. Lessees concluded that, as there were no fact questions raised by the pleadings, and as their interpretation of the lease was correct as a matter of law, they were entitled to judgment on the pleadings.

Lessor filed a memorandum in opposition to lessees' motion for judgment on the pleadings. In support of its memorandum, lessor submitted the affidavits of Stanton Schuman, Milton I. Shadur, and Steven Fennell. Both Schuman and Shadur participated in the lease negotiations on behalf of lessor, and both affirmed that the purpose of section 2.02 was to preclude consideration of the actual assemblage of the property, but not to preclude consideration of the potential assemblage of the property as vacant land with adjacent parcels. In addition, they both stated that no contrary interpretation of section 2.02's language was ever expressed by anyone representing the original tenants' interests during the negotiations which preceded the execution of the lease. In his affidavit Fennell, an appraiser, affirmed that the appraisal standards generally applicable to the appraising of commercial real estate provide for valuation of property at its highest and best use, including the potential use of property in conjunction with adjacent parcels. In light of these facts, lessor contended, lessees' motion for judgment on the pleadings should be denied.

Subsequently, lessor filed a supplemental memorandum in opposition to lessees' motion. Along with the supplemental memorandum, lessor submitted the affidavit of George I. Cowell, an attorney who represented the interests of the original tenants during the lease negotiations. Cowell affirmed:

"The purpose of [section 2.02] was to prevent the appraisers from considering the actual use of the property in determining the Fixed Rent and Additional Rent due under the Lease and the Lease Addendum. It was my understanding that [section 2.02] was not intended by the Lessees to preclude the appraisers, in valuing the Land as vacant land, from applying generally accepted appraisal standards and considering the property's highest and best use, including potential use of the property in conjunction with adjacent parcels, so long as they did not take into account the fact that the assemblage was in fact completed, and that the property was improved with a valuable building and was the subject of a long-term lease."

On the basis of Cowell's affidavit, as well as those it submitted earlier, lessor asserted that section 2.02 did not preclude the appraisers

from considering the possibility of assemblage.

Lessees then filed a reply memorandum in support of their motion for judgment on the pleadings. Initially, lessees argued that the circuit court should strike lessor's affidavits, on the grounds that they could not be considered in deciding whether to grant judgment on the pleadings. Lessees went on to contend that the highest and best use standard did not apply—and, thus, the possibility of assemblage could not be considered—because the parties had agreed to create a different standard in section 2.02.

Lessor filed a motion for partial summary judgment. Along with its motion, lessor resubmitted the Schuman, Shadur, Fennell, and Cowell affidavits. Based on this evidence, lessor maintained, there was no genuine issue of material fact regarding the interpretation of section 2.02; consequently, it was entitled to judgment as a matter of law, as well as a declaration that the appraisers must consider the possibility of assemblage.

Lessees filed a memorandum in opposition to lessor's motion for partial summary judgment. Regardless of the extrinsic evidence, lessees argued, lessor's reading of section 2.02 was incorrect. But even going beyond the text of section 2.02, lessees contended, both the landlord and the original tenants intended that the appraisers should not be permitted to consider the possibility of assemblage. In support of this point, lessees submitted the affidavits of Raymond Sher and Clifford Zoll. Sher, the only living principal on behalf of the original tenants, affirmed that it was his intent to preclude the appraisers from considering the possibility of assemblage; Zoll, the appraiser retained by lessees in 1981, affirmed that the appraisers were precluded from considering the possibility of assemblage. Lessees also incorporated the testimony of Schuman, from his discovery deposition, that there were no discussions of the possibility of assemblage during the lease negotiations. Finally, lessees asserted that the deposition testimony of David Logan, the lessor's sole principal, supported their construction of section 2.02. Lessees concluded, therefore, that issues of fact abounded, requiring the denial of summary judgment.

Lessor then filed a reply in support of its motion for partial summary judgment, and a hearing was held in the circuit court on February 2, 1988. After hearing arguments from both parties, the court reserved its ruling. The court announced its decision on March 25, 1988. The court ruled that section 2.02 meant that the appraisers could not consider possible assemblage. The court also granted lessees' motion to strike lessor's affidavits, in conjunction with the motion for judgment on the pleadings. The court denied lessor's motion for partial

summary judgment, because of what it described as "the many controverted issues involved in this case." The court concluded by noting that it did not find section 2.02 to be ambiguous. A written order was entered later that day, confirming these rulings. The order provides that lessees' motion to strike lessor's affidavits was granted, to the extent they were submitted in response to the motion for judgment on the pleadings; that lessor's motion for partial summary judgment was denied; and that lessees' motion for judgment on the pleadings was granted, it being declared that the appraisers could not consider the possibility of assemblage.

On October 18, 1988, the circuit court heard arguments on lessor's motion to reconsider the entry of judgment on the pleadings and the denial of partial summary judgment. The court denied the motion to reconsider, but granted lessor's request that the interpretation of section 2.02 be certified to this court. On November 11, 1988, the circuit court entered an order, formally denying lessor's motion for reconsideration. The order also recites:

> "The Court finds that its Order granting defendants' motion for judgment on the pleadings and denying plaintiff's motion for summary judgment involves a question of law as to which there is substantial ground for difference of opinion, said question being:
>
> Whether the following Lease language permits consideration of the possibility of assemblage upon re-appraisals of the property: ***."

The order then quotes section 2.02. The court further found that an immediate appeal might materially advance the ultimate termination of the litigation. The order concludes by stating that lessor's alternative request for certification pursuant to Illinois Supreme Court Rule 308(a) (see 107 Ill. 2d R. 308(a)) was granted. We then allowed the appeal.

### III

Lessor argues on appeal that the circuit court erred in granting lessees' motion for judgment on the pleadings. It also contends that the circuit court erred in denying its motion for partial summary judgment. In the alternative, should we find a genuine issue of material fact regarding the interpretation of section 2.02, lessor requests that the cause be remanded for an evidentiary hearing on the question certified by the circuit court. Lessees respond that judgment on the pleadings was properly granted and that partial summary judgment was properly denied. It is their theory on review, as below, that

if the appraisers may not consider the fact of assemblage under section 2.02, then they may not consider the possibility of assemblage.

■■■ This court has stated that the interpretation of a lease is a question of law, to be determined by the reviewing court independently of the trial court's judgment. (See *Hartwig Transit, Inc. v. Menolascino* (1983), 113 Ill. App. 3d 165, 168, 446 N.E.2d 1193, 1195.) If the lease is ambiguous, then extrinsic evidence may be considered in ascertaining its true meaning. (See *Pioneer Trust & Savings Bank v. Lucky Stores, Inc.* (1980), 91 Ill. App. 3d 573, 575, 414 N.E.2d 1152, 1154.) We have defined ambiguous contracts, including leases, as those being capable of being understood in more senses than one; agreements obscure in meaning, due to an indefiniteness of expression or double meaning. (See *Lucky Stores*, 91 Ill. App. 3d at 575, 414 N.E.2d at 1154.) Put another way, extrinsic evidence may be considered to explain language which is reasonably susceptible to more than one meaning. (See *Hartwig Transit*, 113 Ill. App. 3d at 168, 446 N.E.2d at 1196.) Extrinsic evidence, in turn, is that regarding the position of the parties, the surrounding circumstances existing at the time of execution, and the parties' subsequent conduct. (See *Midwest Bank & Trust Co. v. Scot Lad Foods, Inc.* (1986), 140 Ill. App. 3d 166, 169, 488 N.E.2d 676, 678.) It must be remembered, however, that our primary objective is to determine and give effect to the intent of the parties to the lease. *Scot Lad Foods*, 140 Ill. App. 3d at 169, 488 N.E.2d at 677.

■■ Applying these principles to section 2.02, we conclude that it is ambiguous as a matter of law regarding the possibility of assemblage. In other words, section 2.02 is reasonably susceptible to more than one meaning. Lessees' point—that if the appraisers may not consider the fact of assemblage under section 2.02, then they may not consider the possibility of assemblage—is persuasive at first glance, but it does not withstand scrutiny. The text of section 2.02, quoted above, plainly requires the appraisers to consider many fictions or impossibilities: that the land is vacant; that it has not been improved; that no lease exists; and that there has been no actual assemblage. Consequently, for the appraisers to consider one more fiction or impossibility, namely the possibility of assemblage, is not necessarily contrary to the language of section 2.02. Lessees do not deny that there is such a concept as possibility of assemblage, and they go so far as to admit that it is the usual standard. Moreover, there is authority in this State which supports the proposition that both actual and potential uses of realty must be considered when value is at issue. (See, *e.g., Department of Public Works & Buildings v. Hufeld* (1966), 68 Ill.

App. 2d 120, 127-28, 215 N.E.2d 312, 316.) In brief, the fact that the text of section 2.02 neither expressly rules out nor expressly rules in consideration of the possibility of assemblage renders it ambiguous.

■■ But even when the extrinsic evidence submitted by the parties is considered, their intent concerning the possibility of assemblage cannot be determined as a matter of law. On the one hand, the affidavits submitted by lessor suggest that possibility of assemblage is typically considered when commercial real estate is being appraised, and that the original parties assumed that it would be considered during reappraisals; on the other hand, lessees' materials suggest that the possibility of assemblage was never discussed during the negotiations which preceded the execution of the lease. We think that the most prudent course is to remand the cause to the lower court for an evidentiary hearing on the parties' intent regarding the possibility of assemblage. (See *Lucky Stores*, 91 Ill. App. 3d at 576, 414 N.E.2d at 1155) (declaratory judgment appeal remanded for evidentiary hearing, so circuit court could determine intent of parties concerning ambiguous lease provision).) And, we note that this court has been reluctant to rule as a matter of law, on the basis of a limited record, when industry custom and practice is at issue. (See, *e.g., Vincent DiVito, Inc. v. Vollmar Clay Products Co.* (1989), 179 Ill. App. 3d 325, 328, 534 N.E.2d 575, 577.) Therefore, while the circuit court correctly denied partial summary judgment, it incorrectly granted judgment on the pleadings, for section 2.02 does not preclude or require consideration of the possibility of assemblage as a matter of law.

IV

For the stated reasons, we hold that the circuit court did not err in denying lessor's motion for partial summary judgment. However, as we further hold that the circuit court erred in granting lessees' motion for judgment on the pleadings, the cause will be remanded for an evidentiary hearing on the question certified.

Affirmed in part; reversed in part and remanded with directions.

LORENZ and MURRAY, JJ., concur.